Jane D.W. DOE, Plaintiff
Below, Appellant,

v.

The STATE of Delaware, Defendant
Below, Appellee.

No. 447, 2012.

Supreme Court of Delaware.

Submitted: July 3, 2013.
Decided: Sept. 12, 2013.
Reargument Denied Oct. 8, 2013.

Edmund Daniel Lyons, Esquire, (argued), The Lyons Law Firm, Wilmington, Delaware, for Appellant.

Michael F. McTaggart, Esquire, (argued), and Marc P. Niedzielski, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices and NOBLE, Vice Chancellor,* constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider whether the State of Delaware may be held liable for tortious conduct by an on-duty Delaware State Police Officer. The officer was supposed to be taking a woman accused of shop-lifting to court. Instead, the officer allegedly coerced the woman to engage in oral sex in the front seat of the police car. The trial court granted summary judgment to the State based on its conclusion that no reasonable jury could find that the officer was acting within the scope of his employment. The trial court focused only on the officer's tortious conduct, which obviously was not within his job description. But the nature of the tortious conduct is not dispositive. There are other factors used to determine whether one is acting within the scope of employment, and the jury must make that decision.

**Factual and Procedural Background**

On March 19, 2009, a security employee at the JC Penney store in the Christiana Mall stopped Jane D.W. Doe for shoplifting. Doe had been arrested before, and she was subject to an outstanding *capias.* After about 45 minutes, Delaware State Police Officer Joshua Giddings arrived at the store and took Doe into custody. He placed her in the rear of his police car and drove to several locations in the mall parking lot. Doe alleges that, at the third location, Giddings stopped, got out of the police car, opened the rear door, and placed Doe's hands on his genitals.

According to Doe, Giddings then drove to a remote area where he told her that he would let her go home if she did something in return. Giddings allegedly told Doe that, unless she acceded to his demands, he·would take her to court, where bail would be set, and that she would have to spend the weekend in jail. The prospect of jail allegedly coerced Doe to perform oral sex on Giddings in the front seat of the police car. Afterwards, Giddings drove Doe home and told her to turn herself in on the *capias.* Doe reported the incident to Delaware State Police Sergeant Maher, who investigated and eventually arrested Giddings on charges of sexual misconduct, bribery and official misconduct. Giddings killed himself shortly after his arrest.

Doe filed suit against the State of Delaware and Giddings' estate alleging that Giddings' conduct constituted assault, battery and rape. She alleges that the Delaware State Police is an agency of the State of Delaware and that Giddings was acting under his authority as a State Trooper. Doe seeks damages against the State under principles of agency and/or the doc-

* Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required.

trine of *respondeat superior.* The Superior Court granted the State's motion for summary judgment, finding, as a matter of law, that Giddings was acting outside the scope of his employment. The trial court did not address the State's alternative argument that it was protected from suit under the doctrine of sovereign immunity.

## Discussion

■■■ The question of whether a tortfeasor is acting within the scope of his employment is fact-specific, and, ordinarily, is for the jury to decide. "The phrase, 'scope of employment,' is, at best, indefinite. It is nothing more than a convenient means of defining those tortious acts of the servant not ordered by the master for which the policy of law imposes liability on the master."[1] Under the *Restatement of Agency (2d)* § 228, conduct is within the scope of employment if, "(1) it is of the kind he is employed to perform; (2) it occurs within the authorized time and space limits; (3) it is activated, in part at least, by a purpose to serve the master; and (4) if force is used, the use of force is not unexpectable."[2]

In *Draper v. Olivere Paving & Constr. Co.,*[3] an Olivere employee, who was operating a road grader at a repaving site, started yelling at the drivers of two cars that were about to drive over an impassable section of the road. One of the drivers got out of his car, and the employee, while walking toward the driver, told him to get back in his car and turn around. After the two men started exchanging insults, the second driver got out of his car and asked whether the employee had a knife. The employee then slashed the second driver's neck with a corkscrew.

This Court held that the jury must decide whether the employee was acting within the scope of employment when he slashed the victim's throat:

> [T]he question of whether or not [the employee] at the time of his assault upon [the driver] was engaged in the performance of a part of his duties, and whether the use of force under the circumstances was not entirely unexpectable are close ones. Similarly, it is a close and difficult question of fact as to whether the assault ... was entirely the product of [the employee's] anger, which arose independently of his performance of the duties of his employment, or whether it occurred while [the employee] was in fact in the performance of his duties, and was motivated at least in part by the desire to serve his master's interests. These are close and difficult questions. They are not for the decision of the judge as a matter of law, but are questions to be determined by the jury, a cross-section of the public especially adapted to judge the actions of people in the light of what is reasonable.[4]

The Court noted that other jurisdictions have reached similar conclusions in fact patterns involving serious criminal activity.[5]

1. *Draper v. Olivere Paving & Constr. Co.,* 181 A.2d 565, 569 (Del.1962).

2. *Ibid.*

3. 181 A.2d 565 (Del.1962).

4. *Id.* at 571.

5. In *Simmons v. Kroger Grocery & Baking Co.,* 340 Mo. 1118, 104 S.W.2d 357 (1937), for example, a store clerk chased two children for several blocks, and then tripped one child and stomped on his arm. See, also: *Schisano v. Brickseal Refractory Co.,* 62 N.J.Super. 269, 162 A.2d 904 (N.J.Super.1960) aff'd 33 N.J. 323, 164 A.2d 602 (1960) (where employee responsible for keeping private parking lot clear of unauthorized vehicles punched and caused the death of a person who parked in the lot); *Smith v. Bosco,* 126 N.J.L. 452, 19 A.2d 637 (N.J.L.1941) (where employee responsible for collecting bridge tolls stabbed

The Superior Court held that Giddings' conduct was not within the scope of his employment because, "[c]ommon sense dictates that sexually assaulting a crime suspect, a clear abuse of authority under any circumstances, is not incidental to the arrest and detention of a suspect."[6] We agree. No one would argue that beatings, stabbings, shootings, or sexual assaults are incidental to almost any form of employment. Wrongful conduct, by definition, is not within the scope of employment in the sense that it is not conduct the employee was hired to perform. The relevant test, however, is not whether Giddings' sexual assault was "within the ordinary course of business of the [employer], ... but whether the service itself in which the tortious act was done was within the ordinary course of such business...."[7] Stated differently, the test is whether the employee was acting in the ordinary course of business during the time frame within which the tort was committed.

Giddings was in uniform, on-duty, carrying out a police duty by transporting Doe to court. The sexual assault took place in the police car, during the time that Giddings was supposed to be carrying out police duties. These facts would satisfy the first two factors under the Restatement—Giddings was doing the kind of work he was employed to perform, and he was acting within authorized time and space limits. The third factor—whether Giddings was activated in part to serve his employer—has been construed broadly as a matter for the jury to decide[8]. If the act of cutting someone's throat can be considered a service to the employer paving company on the theory that the employee was controlling traffic, then a sexual assault can be considered a service to the police on the theory that part of what Giddings was doing was transporting a prisoner. Finally, to be within the scope of employment, any force used must be "not unexpectable." Several other jurisdictions have noted that sexual assaults by police officers and others in positions of authority are foreseeable risks.[9] The record does not establish the Giddings' conduct was unforeseeable.

## Conclusion

Based on the foregoing, the judgment of the Superior Court is reversed and this matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.

victim with a knife after victim parked in a no parking zone and refused to move his truck.).

6. *Doe v. Giddings*, 2012 WL 1664234, at *3 (Del.Super.).

7. *Martin v. Cavalier Hotel Corp., et al.*, 48 F.3d 1343, 1351 (4th Cir.1995) (Quotations omitted.).

8. See, e.g., *Stropes v. Heritage House Childrens Center of Shelbyville, Inc., et al.*, 547 N.E.2d 244 (Ind.1990) (Question of fact whether nurse's aide, who raped mentally retarded teenager residing in a county welfare department institution, was acting in part to serve the institution's interests.); *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996) (Question of fact whether psychiatrist was acting within scope of employment when he sexually assaulted his patient.); *Johnson v. Weinberg*, 434 A.2d 404 (C.A.D.C.1981) (Question of fact whether laundromat employee who shot customer in the face following dispute about missing shirts was acting within scope of employment.)

9. See, e.g., *Red Elk v. United States*, 62 F.3d 1102 (8th Cir.1995); *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291, 48 Cal. Rptr.2d 510, 907 P.2d 358 (1995).