# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

SCOTT D. SMITH )
)
    Plaintiff, )
)
v. )    C.A. No. N17C-06-323 DCS
)
LIBERTY MUTUAL INSURANCE )
COMPANY AND THE )
NETHERLANDS INSURANCE )
COMPANY )
)
    Defendant. )

Submitted: January 9, 2019
Decided: January 14, 2019

*Upon Joint Motion for Reargument –*
Plaintiff's Motion for Summary Judgment is GRANTED;
Defendant's Motion for Summary Judgment is DENIED.

## OPINION

Lisa C. McLaughlin, Esquire, Attorney for Plaintiff.
Daniel A. Griffith, Esquire, Attorney for Defendant.

**STREETT, J.**

## Introduction

On January 22, 2016, a Middletown High School student[1] (who also worked as a student aid) filed a complaint (the "Underlying Complaint") against the Board of Education of Appoquinimink School District (the "School Board") and Scott D. Smith ("Plaintiff"), a gym/health teacher at Middletown High School and an employee of the School Board.[2] The Underlying Complaint alleges that between 2014-2015 the Student was 17-18 years-old when Plaintiff committed Assault and Battery, Intentional Infliction of Emotional Distress, Gross Negligent Infliction of Emotional Distress, and Gross Negligence.

The School Board is insured with the Netherlands Insurance Company ("Defendant").[3] Plaintiff, in the instant case, seeks to have the Insurance Company also defend him in the Underlying Complaint.[4] Plaintiff asserts that he is an insured under the School Board's insurance policy and that Defendant has a duty to defend him in the underlying action. Defendant contends that it does not have a duty to

---

[1] The plaintiff in the underlying action will be referred to as "Student" to protect her identity.

[2] Case No. N16C-01-198 DCS is pending.

[3] Claims against Liberty Mutual Insurance were dismissed by stipulation on September 26, 2017.

[4] *Smith v. The Netherlands Insurance Company* involves insurance indemnification and defense, however, both parties agree that the current Motion concerns only the duty to defend. *See WoodSpring Hotels LLC v. National Union Fire Insurance Co. of Pittsburgh, PA*, 2018 WL 2085197 at 8 (Del. Super. May 2, 2018) ("In Delaware, [i]t is well settled that an insurer's duty to defend is broader than its duty to indemnify.") (internal quotation marks removed).

defend because Plaintiff is not an insured under the policy definition, the alleged acts do not meet the policy's definition of occurrence,[5] and, even if Plaintiff was covered under those definitions, the Intentional Acts Exclusion and/or the Sexual Misconduct Exclusion extinguish its duty to defend since all of the allegations allege sexual misconduct. The parties filed cross-motions for summary judgment. The Court denied summary judgment as to both parties. Both parties then filed joint motions for reargument asking the Court to decide as a matter of law whether there is a duty to defend.[6] Upon instruction from the Court, the parties filed simultaneous, supplemental briefs. Having considered the Joint Motion for Reargument, the briefs, and a hearing on the matter, Plaintiff's Motion for Summary Judgment is GRANTED; Defendant's Motion of Summary Judgment is DENIED.

---

[5] Section II(5) of the insurance policy defines who is an insured:

> 5. Any of your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

Section V-Definitions:

> 13. "Occurrence" means accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[6] Delaware Superior Court Civil Rule 59(e) Rearguments. A motion for reargument shall be served and filed within 5 days after the filing of the Court's opinion or decision. The motion shall briefly and distinctly state the grounds therefor. Within 5 days after service of such motion, the opposing party may serve and file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether reargument will be granted. A copy of the motion and answer shall be furnished forthwith by the respective parties serving them to the Judge involved.

3

## Standard of Review

Summary judgment may be granted by the Court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[7] When cross-motions for summary judgments are filed, Superior Court Civil Rule 56(h) provides:

> Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.[8]

"In the event that parties file cross-motions for summary judgment, the parties implicitly concede the absence of material factual disputes and acknowledge the sufficiency of the record to support their respective motions."[9]

## Discussion

By submitting cross motions for summary judgment, "the parties have implied there is no factual conflict,"[10] that the record is sufficient "to support their respective

---

[7] *Ford v. Taylor*, 2018 WL 6016573 at *2 (Del. Super. Nov. 15, 2018).

[8] Delaware Superior Court Civil Rule 56(h).

[9] *Slaubaugh Farm, Inc. v. Farm Family Cas. Ins. Co.*, 2018 WL 3559252 at *1 (Del. Super. July 23, 2018) (internal quotation marks removed).

[10] *See Mass. Elec. Const. Co. v. Siemens Bldg. Technologies Inc.*, 2010 WL 5551787 at *3 (Del. Super. Sept. 28, 2010).

4

motions,"[11] and that there is no issue of material fact preventing summary judgment.[12] Moreover, both parties assert that the Court must decide, as a matter of law, whether there is a duty to defend in this case.[13] As such, the parties have asked the Court to decide whether the factual allegations in the Underlying Complaint trigger the insurer's duty to defend.

The Underlying Complaint alleges the following:[14]

6. At the beginning of her senior year, in late summer 2014, [Student] began serving as a student aid to [Plaintiff] during the school day and particularly during her fourth period.

7. It was in connection with her duties as a student aid that she gave [Plaintiff] her cell phone number.

8. During the fall of 2014 [Plaintiff] began texting [Student] regarding non-student aid matters. It began as one to two texts per day but increased to six per day. The texting increased throughout the Spring of 2015.

9. [Student] stopped aiding [Plaintiff's] class in January 2016.[15] After this, [Plaintiff's] texts to [Student] increased.

---

[11] *Slaubaugh Farm, Inc.*, 2018 WL 3559252 at *1.

[12] *Id.*

[13] Defendant's Reply Brief in Further Support of its Motion for Reargument, at 1; Plaintiff's Opening Brief in Support of the Joint Motion for Reargument, at 3.

[14] The following enumerated allegations correspond with the paragraph numbers in the Underlying Complaint.

[15] It appears that this date is an error because the Underlying Complaint refers to the 2014-2015 school year.

10. [Plaintiff] texted [Student] during all times throughout the day, including during the weekday during his work hours and when he was on school property.

11. Another time [Plaintiff] texted [Student] that he wanted to come over and snuggle with her.

12. During the Spring of 2015, the only access to the weight room was through [Plaintiff]. Instead of helping the baseball players who he coached, he focused more on [Student] instead, making her uncomfortable.

13. [Plaintiff] asked [Student] to come to his office one day and he pulled out his University of Delaware freshman year school identification card, showed it to her, and said "See what would be following you around all day" and gave her a creepy smirk.

14. [Plaintiff] pulled [Student] out of her AP classroom and told her he had emailed her teachers to see if [Student] could be excused so that he could give her good luck and give her a hug.

15. [Plaintiff] put his arm around [Student] and touch [sic] her several times at school and on school property, which was unwanted and made her feel scare [sic] and uncomfortable.

16. Employees of Appoquinmink School District … saw [Plaintiff] put his arm around [Student].

17. [Plaintiff] showed up uninvited at [Student's] house during the Spring of 2015. He insinuated himself into her family.

18. [Plaintiff's] entire course of behavior implied sexual innuendo or directly stated it.

19. [Plaintiff] lied to his wife about being with [Student].

6

20. As [Student] tried to limit this contact with [Plaintiff], he became more insistent and texted [Student] more frequently.

21. [Plaintiff] waited for [Student] to walk by his classroom in the mornings, and her friends witnessed this behavior.

22. One time [Student] and her sister were home alone and [Plaintiff] texted that he was right outside in the front of her house.

23. [Plaintiff] would tell [Student] about getting treatment for his problems with anger.

24. On April 22, 2015 [Student] complained to Appoquinmink School District employees Miss Tiberi (now Krieger) and Miss Wyndley, the assistant principal, about the behavior of [Plaintiff] as set forth above.

25. Between April 27, 2015 and May 2015 [Plaintiff] sent 36 text messages to [Student].

26. Subsequently, an employee of Appoquinimink School district reported [Plaintiff's] behavior to Middletown Police Department.

27. Upon information and belief, someone from Middletown Police Department warned [Plaintiff] not to contact [Student] again.

28. However, [Plaintiff] continued to contact [Student] and her family until his arrest by Middletown Police Department.[16]

The Underlying Complaint also alleges that "[Plaintiff] was actuated at least in part

by a purpose to serve the [School] Board."[17]

---

[16] Underlying Complaint, at paragraphs 6—28.

[17] *Id.* at paragraph 42.

7

The issue, whether an insurer has a duty to defend, has been analyzed previously by Delaware Courts. Generally, the Court has found a duty to defend unless, as a matter of law, there is "no possible factual or legal basis upon which the insurer might eventually be obligated to indemnify the insured."[18]

"The determination of whether a party has a duty to defend should be made at the outset of the case."[19] The Court explained that "[a]n early decision provides the insured with a defense at the beginning of the litigation and permits the insurer to control the defense strategy."[20]

In *Tyson Foods. Inc. v. Allstate Ins. Co.*, the Superior Court stated that "[t]he Court generally will look to two documents in its determination of the insurer's duty to defend: the insurance policy and the pleadings of the underlying lawsuit."[21] "The test is whether the complaint alleges a risk within the coverage of the policy."[22]

---

[18] *National Union Fire Ins. Co. of Pittsburgh PA. v. Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690 at *8 (Del. Super. Jan. 16, 1992).

[19] *Ben Hen Mechanical, Inc. v. Atlantic States Ins. Co.*, 2011 WL 1598575 at *3 (Del. Super. Apr. 21, 2011).

[20] *Id.*

[21] *Tyson Foods. Inc. v. Allstate Ins. Co.*, 2011 WL 3926195 at *6 (Del. Super. Aug. 31, 2011).

[22] *Continental Casualty. Co. v. Alexis I. DuPont School Dist.*, 317 A.2d 101, 103 (Del. Mar. 4, 1972).

The Delaware Supreme Court, in *Continental Casualty. Co. v. Alexis I. DuPont School Dist.*,[23] set forth guidelines to apply when "considering whether an insurer is bound to defend an action against its insured."[24] The Court stated:

(a) Where there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured;

(b) Any ambiguity in the pleadings should be resolved against the carrier;

(c) If even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises.[25]

In *Rhone-Poulenc Basic Chemicals Co.*, the Delaware Superior Court concluded that the "[t]he adoption of [the first] principle in *Continental Casualty* confirms that in Delaware, an insurer's duty to defend its insured arises when the allegations of the underlying complaint show a *potential* that liability within coverage will be established."[26] It also held that "in determining an insurer's obligation to defend, any doubt as to whether the complaint against the insured alleges a risk insured against should be resolved in favor of the insured."[27] Thus, "[a]n insurer [...] can be excused from its duty to defend *only* if it can be determined

---

[23] *Continental Casualty. Co.* 317 A.2d 101.

[24] *Id.* at 105.

[25] *Id.*

[26] *Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690 at *7 (emphasis in the original).

[27] *Id.* at 7.

as a matter of law that there is no possible factual or legal basis upon which the insurer might eventually be obligated to indemnify the insured."[28]

Plaintiff contends that he is an insured and entitled to a defense by Defendant because he acted within the scope of his employment pursuant to Restatement (Second) of Agency §228.[29] Plaintiff claims that the Underlying Complaint reflects that some of the alleged conduct occurred on school property, during work hours, and that Plaintiff was actuated, at least in part, by the purpose of serving the School Board. Plaintiff asserts that "[t]he factual allegations in paragraphs 8, 9, 10, 12, 13, 14, 15, 17, 21 and 25, when viewed in a light most favorable to [Plaintiff], support the inference that [Plaintiff] was acting within the scope of his employment."[30]

Plaintiff then asserts that the Intentional Acts Exclusion and the Sexual Misconduct Exclusion do not extinguish Defendant's duty to defend. Plaintiff argues that the duty to defend exists if any of the alleged acts is covered under the terms of the policy. Plaintiff also asserts that the factual allegations must be

---

[28] *Id.* at *8 (emphasis added).

[29] Restatement (Second) of Agency §228:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>    (a) it is of the kind he is employed to perform;
>    (b) it occurs substantially within the authorized time and space limits;
>    (c) it is actuated, at least in part, by a purpose to serve the master, and
>    (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

[30] Plaintiff's Opening Brief in Support of the Joint Motion for Reargument, at 8.

"liberally construed" in favor of the insured. Thus, according to Plaintiff, because the Underlying Complaint alleges acts that could be construed as non-sexual and as supporting the claim of negligence, the Intentional Acts and Sexual Misconduct Exclusions do not apply.

Lastly, Plaintiff contends that *Sherman v. State Dept. of Public Safety*[31], in adopting Restatement (Second) of Agency §219,[32] expanded the scope of employment test. Plaintiff argues that "[u]nder *Sherman*, Delaware courts now must consider §228 in tandem with §219 of the Restatement (Second) of Agency (...) when determining whether an employee's conduct falls within the scope of employment."[33] He argues that "[i]f the employee's conduct falls under one of the exceptions enumerated in §219, there is no obligation to satisfy §228 to be considered within the scope of employment."[34] Here, Plaintiff asserts that he was

---

[31] *Sherman v. State Dept. of Public Safety*, 190 A.3d 148 (Del. June 26, 2018).

[32] Restatement (Second) of Agency §219:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>> (a) the master intended the conduct or the consequences, or
>> (b) the master was negligent or reckless, or
>> (c) the conduct violated a non-delegable duty of the master, or
>> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

[33] Plaintiff's Supplemental Brief Addressing the Applicability of *Sherman v. State Dept. of Public Safety*, 190 A.3d 148 (Del. 2018), at 2.

[34] *Id.* at 2-3.

11

acting within the scope of employment under §219(2)(c) because teachers owe a non-delegable duty to their students and under §219(2)(d) because Plaintiff was aided in accomplishing the alleged torts by the existence of his agency relation with the School Board.

Defendant contends that it does not owe Plaintiff a duty to defend because Plaintiff is not an insured under the policy terms as he was not acting within the scope of his employment and the alleged acts do not meet the policy's definition of an occurrence because the alleged conduct was not an 'accident.'

Defendant argues that Plaintiff does not satisfy any of the §228 prongs because "sexually harassing a student is not the kind of conduct he was hired to perform," "much of the relevant conduct was alleged to have occurred off property,"[35] "the conduct was not limited to the time and space limits of the school day,"[36] and "there can be no reasonable argument that Plaintiff's sexual harassment of a student was activated, at least in part, by a purpose to serve the school district."[37] Defendant characterizes Plaintiff's claims as "unfathomable" and challenges Plaintiff's

---

[35] Defendant's Answering Brief in Opposition to Plaintiff's Opening Brief in Support of Their Motion for Summary Judgment, at 7.

[36] *Id.*

[37] *Id.* (internal quotation marks).

12

argument that teacher sexual misconduct toward a student is a 'foreseeable risk.'

Defendant writes:

> [Plaintiff's] position [that he was acting within the scope of his employment] is completely unfathomable, especially in light of the obvious reality that the vast majority of high school students are minors. The logical conclusion reached from [Plaintiff's] argument is that sexual assault and harassment must be "not unexpectable" for teenage high school students from their teachers. Stated differently, sexual assault at the hands of a teacher is a "foreseeable risk" of attending high school.[38]

In addition, Defendant contends that *Sherman* is distinguishable from the instant case for two reasons: the instant case "is an insurance dispute with an explicit coverage provision—the Sexual Misconduct Exclusion—that precludes coverage" and the insurance policy in the instant case explicitly defines "an insured" as "[Y]our 'employees' … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business…"[39] Therefore, Defendant argues, "the Policy actually requires that the employees, in this case, [Plaintiff], be within the course and scope of employment, for coverage to apply."[40]

Defendant then argues that, even when analyzed under §219, Plaintiff would not satisfy any exceptions to §228 because none of the allegations supports a finding

---

[38] *Id.* at 14.

[39] Defendant's Supplemental Submission of Parties' Cross-Motions for Reargument, at 8—9.

[40] *Id.*

that Plaintiff acted or spoke on behalf of the school or on behalf of the school district, that Plaintiff accomplished the torts by the existence of the agency relationship, or that Student relied on Plaintiff's apparent authority. Defendant then asserts that Plaintiff "will not be able to cite legal precedent that extends the *Sherman* decision, or its rationale, to high school teachers."[41]

Lastly, Defendant asserts that, even if the Court finds that Plaintiff qualifies as an insured under the insurance policy terms, the Intentional Acts Exclusion and/or the Sexual Misconduct Exclusion in the insurance policy would extinguish Defendant's duty to defend Plaintiff in the underlying action because the Underlying Complaint alleges intentional criminal sexual harassment.

In the instant case, this Court is guided by *Sherman v. State Dept. of Public Safety*, a recent Delaware Supreme Court case holding that:

> Although … the question of whether a tortfeasor is acting within the scope of his employment is fact-specific, and ordinarily, is for the jury to decide, the question of whether tortious conduct falls within the scope of employment is decided by the court if the answer is clearly indicated.[42]

Thus, in determining whether Defendant owes Plaintiff a duty to defend, the Court must first find that Plaintiff is an insured under the insurance policy. If the

---

[41] *Id.* at 10.

[42] *Sherman*, 190 A.3d at 170 (internal quotation marks removed).

14

Court finds that Plaintiff has met that threshold, the Court must then determine whether the Intentional Acts Exclusion and/or Sexual Misconduct Exclusion would extinguish the duty to defend.

Delaware courts follow the Restatement (Second) of Agency §228 when determining whether an employee was acting within the scope of employment for the purpose of employer liability.[43] §228 contains four prongs that must be satisfied to find that an employee was acting within the scope of employment:

> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master, and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.[44]

*Sherman v. State Dept. of Public Safety* involved a state police officer who sexually assaulted an arrestee during the time that he was responsible for transporting the arrestee. That case analyzed §228 and its complement, §219.[45] The Court in *Sherman* found that the officer satisfied the first two prongs of §228 but

---

[43] *Cody v. Hardy*, 2017 WL 5075509 at *3 (Del. Super. Oct. 31, 2017).

[44] Restatement (Second) of Agency §228.

[45] *Sherman*, 190 A.3d at 154 (The Court held that §219 is "a complement to §228.").

15

that the officer did not satisfy the third prong (the Motivation Prong) of §228.[46] As such, the Court held that the State could not be held liable under an isolated analysis of §228[47] even though the Court found that "there is no question of fact" that the fourth prong (the Foreseeability Prong) was satisfied because there was undisputed evidence that sexual misconduct by police officers was generally foreseeable.[48]

Nevertheless, the Court ultimately found that the employer was liable when Restatement §228 was analyzed with its "complementary" section, Restatement (Second) of Agency §219.[49] The Court held that §228 "should operate within the context of its Restatement counterpart, §219, as the Restatement intends,"[50]

---

[46] *Id.* at 174 (The Court held that the arrestee "never alleged that the Officer's misconduct was motivated in any part by a desire to serve the State Police or the State" and the "complaint alleged that the Officer sought oral sex solely to gratify himself.").

[47] *Id.* at 174 (Referencing *Doe v. State*, 76 A.3d 774 (Del. Oct. 8, 2013), where it was alleged that a police officer committed a sexual assault on an arrestee, the *Sherman* Court held that "[i]f Doe was required to satisfy the Motivation Prong of §228, she could not, and judgment was owed to the State on that ground. That reality underscores why Doe originally argued that §219 relieved her of the need to satisfy §228, and why we examine §219's relevance in this decision.").

[48] *Id.* at 154 (The Court explained that under §228's Foreseeability Prong (the fourth prong), "the general risk of the wrongdoing, not the specific risk of the employee engaging in that conduct, [must] be foreseeable.").

*Id.* at 175-77 (The Court in *Sherman* noted that "the parties have assumed that §228's Foreseeability Prong, which requires that, "if force is used, the use of force is not unexpectable," applies to this case, likely because [the plaintiff's] original complaint sued the State for the torts of assault and battery.").

[49] *Id.* at 153 (§219 "is a complement to §228.").

[50] *Id.* ("Section 219 enumerates the situations in which a master may be liable for torts of servants acting solely for their own purposes and hence not in the scope of employment.") (internal quotation marks removed).

explaining that §219 "is referenced as a companion provision in §228, and when embracing the Restatement, this Court should be inclined to embrace its relevant provisions in their entirety and not cherry-pick isolated sections."[51] *Sherman* held that "[w]hen §219's exceptions apply, an employer can be held responsible under *respondeat superior* even if §228 is not satisfied."[52]

The §219 exceptions are:

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, *unless*:
    (a) the master intended the conduct or the consequences, or
    (b) the master was negligent or reckless, or
    (c) the conduct violated a non-delegable duty of the master, or
    (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.[53]

The Court in *Sherman* instructed that §219 should be used to "bypass" the requirements of §228 when justified:

By widening our lens to consider §219, which was designed to provide exceptions to §228 by allowing a plaintiff's claims to bypass all of §228's requirements when justified, we believed we would better position ourselves to give §228 its most sensible interpretation.[54]

---

[51] *Id.* at 177.

[52] *Id.*

[53] Restatement (Second) of Agency §219 (emphasis added).

[54] *Sherman*, 190 A.3d at 169.

17

In *Sherman*, the Court focused on Restatement subsections §219(2)(c) and §219(2)(d). The Court explained that §219(2)(c) provides for *respondeat superior* liability outside the scope of employment when the employer owed a non-delegable duty to the tortfeasor's victim and §219(2)(d) provides *respondeat superior* liability outside the scope of employment when the tortfeasor was aided in accomplishing the tort by the existence of the agency relationship.[55]

The Court found that §219(2)(c) was applicable because police departments owe a non-delegable duty to their arrestees. The Court held that "[w]hen the State authorizes police officers to take away the liberty of arrestees, it cannot delegate away its own responsibility to make sure that an arrestee is not harmed by the tortious conduct of its arresting officers."[56] The Court in *Sherman* also found that the State was liable for the police officer's act under §219(2)(d) because police officers have "potent coercive power" and "presumptive legal authority to deprive a person of [...] liberty."[57] The Court noted that there are serious consequences for resisting arrest and explained that an arrestee "would rightly fear that if she refused the Officer, he would seek to put her in jail."[58] Moreover, the Court stated that "there is no question

---

[55] *Id.* at 177-78 (internal quotation marks removed).

[56] *Id.* at 182.

[57] *Id.* at 179-81.

[58] *Id.* at 181 ("Arrestees are by definition required to surrender their control and autonomy to the State upon their arrest. The Delaware Criminal Code gives no right to resist an arrest by a police

18

that the Officer was aided in accomplishing the sexual misconduct by his position of authority, because the wrongful acts flowed from the very exercise of this authority."[59]

Following the same sequence of analysis used by the Supreme Court in *Sherman*, this Court will first analyze whether Plaintiff's alleged acts in the Underlying Complaint were within the scope of employment under the four prongs of §228 and then whether any §219 subsection applies. Here, all four prongs in §228 are satisfied and §219 is also satisfied.

In *Doe v. State*,[60] the Delaware Supreme Court analyzed §228's first and second prongs together. In that case, the Court held that prong one and two of §228 were satisfied as a matter of law because:

> [The Officer] was in uniform, on-duty, carrying out a police duty by transporting [Doe] to court. The sexual assault took place in the police car, during the time that [the Officer] was supposed to be carrying out police duties. These facts would satisfy the first two factors under the Restatement— [the Officer] was doing the kind of work he was employed to perform, and he was acting within authorized time and space limits.[61]

---

officer, whether or not the arrest was lawful and whether or not the accused knew the arrestor was a police officer. In fact, it is a class G felony to resist an arrest with force or violence, and a class A misdemeanor to peacefully resist an arrest.") (internal quotation marks removed).

[59] *Id.* at 180-81 ("Had [the officer] not been in uniform, in a marked patrol vehicle and effectuating an arrest, [the tort victim] would not have stopped at his direction and the events that followed would not have occurred.") (internal quotation marks removed).

[60] *Doe v. State*, 76 A.3d 774, 777 (Del. Oct. 8, 2013).

[61] *Id.* at 777; *See also, Sherman*, 190 A.3d at 159 (The Court in *Sherman* quoted this paragraph and did not question the reasoning).

In the instant case, the allegations in the Underlying Complaint are similar (sexual innuendo) and more numerous than the one act of sexual misconduct in *Doe v. State* or *Sherman v. State Dept. of Public Safety*. The Underlying Complaint alleges that some of the misconduct occurred while Plaintiff was on-duty[62] and carrying out his duties as a teacher;[63] on school property;[64] and acting during school hours.[65] Therefore, the allegations satisfy prongs one and two of §228.[66]

Whether the third prong of Restatement §228 is satisfied is less straightforward. As required by the third prong, as in *Sherman v. State Dept. of Public Safety*, the Underlying Complaint in the instant case broadly alleges that "[Plaintiff] was actuated at least in part by a purpose to serve the [School] Board."[67]

---

The Court in *Doe v. State* held that the third and fourth prongs were to be decided by the jury. *Sherman v. State Dept. of Public Safety* later re-examined *Doe*'s treatment of the third and fourth and held that these issues can be decided by the Court if the answer is clearly indicated.

[62] *See* Underlying Complaint, at paragraphs 10, 12, 13, 14, 15, and 21.

[63] *Id.* at paragraph 43 ("All of [Plaintiff's] contacts with [Student] were made pursuant to [Plaintiff's] routine and regular job duties"); *See also, Id.* at paragraphs 6, 12, 13, and 14.

[64] *Id.*

[65] *Id.* at paragraphs 10, 12, 13, 14, 15, and 21.

[66] *Mojica v. Smyrna School District*, 2015 WL 13697693 at *3 (Del. Super. Dec. 17, 2015) (The first two prongs were satisfied because the teacher/track coach asked the student "to accompany her to her classroom at the conclusion of track practice, and she performed the tortious act on school grounds.").

[67] Underlying Complaint, at paragraph 42.

Defendant, in opposition, argues that the complaint "is completely untenable" because Plaintiff alleged a course of conduct of sexual innuendo and several allegations allege "criminal sexual harassment."[68]

The law is clear that if an ambiguity exists where two reasonable interpretations are possible, "[a]ny ambiguity in the pleadings should be resolved against the carrier..."[69]  Moreover, in resolving such an ambiguity, "[t]he Court may review the complaint as a whole, considering all reasonable inferences that may be drawn from the alleged facts."[70]

Here, the Underlying Complaint specifically alleges that Plaintiff was motivated in part by the purpose to serve his employer and alleges facts that could potentially support that allegation.  Arguably, Plaintiff's actions of focusing on the student in the weight room or waiting for the student to walk by Plaintiff's classroom could be actuated *in part* by Plaintiff's desire to supervise the student in carrying out Plaintiff's duties to the School Board.  So too, it could potentially be argued that Plaintiff's act of pulling Student out of her AP classroom to "give her good luck"

---

[68] Defendant's Answering Brief in Opposition to Plaintiff's Motion for Reargument, at 11.

[69] *Continental Casualty. Co.*, 317 A.2d at 105; *See* also, St. *Anthony's Club v. Scottsdale Ins. Co.*, 1998 WL 732947, at *3 (Del. Super. July 15, 1998).

[70] *United Westlabs, Inc. v. Greenwich Ins. Co.*, 2011 WL 2623932 at *8 (Del. Super. June 13, 2011).

was *in part* attempting to encourage a student for the purpose of fostering student self-confidence and optimal student performance, thereby serving the School Board.

The Delaware Superior Court has held that "[t]he duty to defend is not affected by the validity of the underlying claims."[71] Thus, when read as a whole, the Underlying Complaint states factual allegations that *potentially* support the claim that some of Plaintiff's alleged conduct was actuated by a purpose to serve the School Board.

In *Sherman* the Court explained that the fourth prong, foreseeability, is satisfied if there is an abuse of authority and "evaluates whether the degree of force the tortfeasor used is not unexpectable."[72] The Court in *Sherman* recognized that police abuse of authority is not unexpectable.

In the instant case, the Court finds that a teacher has significant authority entrusted to him or her. Here, the Foreseeability Prong, is satisfied because misuse of authority over minors is not unexpectable and the Underlying Complaint alleges that "[Plaintiff's] conduct was not unexpected by the Board."[73] The Delaware Superior Court specifically held in *Mojica v. Smyrna School District*, a 2015 case,

---

[71] *Id.*

[72] *Sherman*, 190 A.3d at 161.

[73] Underlying Complaint, at paragraph 42.

that abuse by teachers is foreseeable.[74] Additionally, the *Mojica* case does not appear to be an isolated incident.[75] As such, it could not have been unexpectable that Plaintiff, a teacher, might engage in behavior, such as hugging or touching, that a student might perceive as sexual innuendo. Plaintiff was clearly in a position of authority. He was her teacher and she was his student (and his student aid).[76]

Although Defendant argues that *Sherman* does not apply to the instant case, both parties have conceded that the Delaware Supreme Court's interpretation of Restatement (Second) of Agency §228 is the proper test to determine whether

---

[74] *Mojica*, 2015 WL 13697693 at ** 3, 5 (In a case involving a teacher who pled guilty to raping a student, the Delaware Superior Court held: "acts of sexual abuse by persons in positions of authority are foreseeable risks, and therefore must be considered expectable." The Court also held that: "The *Doe* Court's opinion noted that assaults by police officers *and others in positions of authority* are foreseeable risks, thus bringing teachers under the purview of *Doe*.") (emphasis in the original). (internal quotation marks removed).

[75] *See Whitwell v. Archmere Academy, Inc.*, 2008 WL 1735370 (allegation that a teacher continuously sexually abused a student over a 33-month period.); *McAlley v. Selective Ins. Co. of Am.*, 2011 WL 601662 (Del. Super. Feb. 16, 2011) (a Delaware case cited by Defendant) (where a teacher was accused of raping a student.); *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187 (Del. May 21, 2015) (former student sued a small school for gross negligence for failing to prevent her teacher from sexually abusing her); *Fults v. Qualls*, 635 Fed.Appx. 316 (6th Cir. Jan. 22, 2016) (case involving Tennessee teacher who was convicted of raping a student); *Stein v. County of Westchester, N.Y.*, 410 F.Supp.2d 175 (S.D.NY Jan. 17, 2006) (case involving New York teacher who was convicted for sexual behavior involving three of her students).

[76] Moreover, 10 *Del.C.* §8145 creates a civil cause of action for sexual abuse of a minor and 19 *Del.C.* §711A(g), recently enacted, addresses this issue of sexual misconduct. §711A(g) requires every Delaware employer having 50 or more employees to provide "interactive training and education to employees regarding the prevention of sexual harassment."

23

Plaintiff is an insured under the insurance policy in the instant case. As such, this Court must apply §228 in conjunction with §219 as instructed in *Sherman*.[77]

In *Sherman* the Court found that under §219(2)(c) the State has a non-delegable duty to arrestees "[b]ecause under Delaware law it is a crime to resist arrest, even peaceably, the arrestee has no option but to remain under the arresting officer's domain …"[78] The Court in *Sherman* also cited, as persuasive authority, an Indiana Court of Appeals case that held that "a non-delegable duty exists as a matter of law when patrons must surrender their control and autonomy to the entity while they are in its care."[79]

Here, students attending school in the Appoquinimink School District are in the care of the school and must surrender authority to the adults in charge. Additionally, students are not free to leave the school after arrival until the end of the school day unless the student has authorization to leave.[80] Students who defy the

---

[77] *Sherman*, 190 A.3d at 161 (§228 "should operate within the context of its Restatement counterpart, §219, as the Restatement intends.")

[78] *Id.* at 182.

[79] *Id.* (internal quotation marks removed).

[80] Appoquinimink School District: 2018-19 Student Code of Conduct, at 40:

> *LEAVING SCHOOL WITHOUT AUTHORIZATION (S0051): Once a student arrives at the school campus he/she may not leave unless authorized to do so, until the end of the student's scheduled day. The parking lot is off limits during school hours. Returning to school after leaving without permission may be considered reasonable suspicion to conduct a search.*

24

school's authority or leave the school without authorization are subject to detention, suspension, and police intervention.[81] Therefore, it appears that schools would owe a similar duty to students in their custody as the State owes to an arrestee in its custody.[82]

In addition, the facts of the instant case satisfy §219(2)(d). As in *Sherman*, where the Court held that police have "unique, coercive authority entrusted [to them],"[83] teachers also have unique, coercive authority entrusted to them and leverage over students. Indeed, a student may face immediate or future substantial risk for insubordination or challenging a teacher's authority.[84]

---

[81] *Id.*

[82] The dissent in *Sherman* appeared to consider that the holding in *Sherman* could also be construed as applying to schools:

> It also is unclear whether the holding applies only to law enforcement agencies, or whether every public (and private) employer will now be faced with lawsuits seeking to extend this ruling even beyond the law enforcement arena. Schools, daycares, nursing homes, and facilities for our State's most vulnerable citizens, and an untold number of other employers (including government agencies) might be held liable in money damages for the intentional torts committed by rogue employees with a purpose wholly divorced from the interest of the employee's employer.

*Sherman*, 190 A.3d at 203 (Valihura, J. dissenting).

[83] *Id.* at 155.

[84] Consequences could be punitive or coercive. Punitive consequences might be detention, suspension, etc., or poor grades. Coercive consequences might be denial of privileges, inability to participate in programs, or withholding letters of recommendation. Hence, a student might reasonably believe that refusing to submit to a teacher's authority could have long-ranging and permanent consequences that could hinder or derail academic success, college admissions, financial aid, and ultimate career goals.

Moreover, the *Sherman* case concerned coercion upon an adult and held that the authority that police wield (over an adult) is coercive. The instant case involves the teacher's capacity to exercise authority over a more vulnerable person — a minor.[85] Furthermore, the arrestee in *Sherman* was arguably in police custody as a result of her own adult conduct. In contrast, a minor's attendance at school is compulsory[86] and a teacher's authority begins upon a student's enrollment and is not precipitated by any act affirmatively committed by a minor.

Here, it reasonably could have appeared to Student, who was a minor, that Plaintiff's exercise of authority, however allegedly alarming, derived from his employer and employment status. According to the Underlying Complaint, other School Board employees aided Plaintiff in interrupting Student's AP classwork to

---

[85] *Miller v. Alabama*, 567 U.S. 460, 471-72 (2010) ("developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds.") quoted in *Zebroski v. State*, 179 A.3d 855, 861 (Del. Jan. 25, 2018); *See also Sherman*, 190 A.3d at 203 (Valihura, J. dissenting) (the dissent includes schools in a discussion on facilities for the "State's most vulnerable citizens.").

[86] 14 *Del. C.* §2702:

> (3) Every student who is enrolled in a public school of this State shall attend the school each day of the minimum school term and any academic improvement activities required by § 153 of this title. A student who has been absent from school without a valid excuse for more than 3 school days in a school year is a truant. A truant and the parent of a truant are subject to the administrative procedures and court proceedings set out in subchapter II of this chapter.

As such, failure to have a child attend school could result in arrest of the parent. (14 *Del. C.* §2729). In addition, the school may file a civil charge of truancy against the student and the Court may adjudicate the student a truant (14 *Del. C.* §2730).

pull her out for Plaintiff to wish her good luck,[87] employees of the school watched Plaintiff put his arm around Student and did not intervene,[88] and the School Board required Student to give her personal cell phone number to Plaintiff.[89] As with the arrestee in *Sherman*, it would not be unreasonable for a minor to believe that there would be adverse consequences and undesirable repercussions if she challenged or acted insubordinately to Plaintiff's authority that was open and apparent to her, other students (the baseball players whom he allegedly ignored), and other School Board employees.[90]

Moreover, under §219(2)(d), it appears that Plaintiff was aided in his alleged tortious acts by the existence of his agency relation with the school. Student was evidently instructed to reveal her cell phone number to Plaintiff because she served as his student aid, which made it possible for Plaintiff to harass Student via text messages. In addition, Plaintiff used his role as an agent of his employer (which gave him authority over students and access to school property) to pull Student out

---

[87] The Underlying Complaint, at paragraph 14.

[88] *Id.* at paragraph 16.

[89] *Id.* at paragraph 7.

[90] *Sherman*, 190 A.3d at 180 ("Someone in Doe's position would rightly fear that if she refused the Officer, he would seek to put her in jail. And if she attempted to tell the magistrate what he did, she might fear that she would be disbelieved by a magistrate who may have dealt with the Officer in other cases, and perhaps get even worse treatment for appearing to have falsely accused a member of law enforcement of wrongdoing. Fear of that kind would be reasonable, as someone in Doe's position would assume the Officer would lie to the court.").

27

of her AP class so that he could hug her, to have her come into his office where he allegedly made an inappropriate comment to her, to overly focus on her in the weight room, and to wait for her as she passed by his office. Had Plaintiff not been a teacher, on school property, and functioning in a supervisory role over minors during school hours, he would have had no authority or ability to commit some of these alleged acts and Student would not have been allegedly harmed by him.[91]

Defendant also has asserted that Plaintiff was not an insured because the alleged conduct did not constitute an 'occurrence' as required by the insurance policy.[92] The insurance policy defines 'occurrence' as an 'accident.'[93] The insurance policy does not define 'accident.'

The Delaware Superior Court has defined 'accident', in the insurance policy context, "as an event not anticipated or foreseen by the victim, or an outcome not

---

[91] *Id.* at 180-81 (The Delaware Supreme Court similarly reasoned that: "Had [the officer] not been in uniform, in a marked patrol vehicle and effectuating an arrest, [the tort victim] would not have stopped at his direction and the events that followed would not have occurred.") (internal quotation marks removed).

[92] The School Board's insurance policy with Defendant states:

> (b) This insurance applies to "bodily injury" and "property damage only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

[93] *Id.* at 15:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

intended by the insured."[94]   Several Delaware cases have found that an 'accident' occurred when the event was not expected by the victim.[95]   So too, in the instant case, nothing in the Underlying Complaint suggests that Student anticipated or foresaw Plaintiff's alleged tortious acts.   Additionally, at the Summary Judgment Hearing, Defendant conceded that there are legal theories that state that negligence can be accidental conduct.[96]

Moreover, case law suggests that "counts ... of negligence ... may count as "occurrences" as defined in [an insurance] policy.[97]   In a 2016 case, *Liberty Insurance Corp. v. Korn*, the U.S. District Court of Delaware held that allegations in the underlying action alleging negligent conduct "satisf[ied] the policy's requirement of an 'occurrence' causing bodily injury."[98]   Here, because the

---

[94] *Camac v. Hall*, 698 A.2d 394, 396 (Del. Super. Oct. 7, 1996); *Liberty Insurance Corp. v. Korn*, 210 F.Supp.3d 612, 617 (D. Del. Sept. 26, 2016).

[95] *State Farm Fire and Casualty v. Hackendorn*, 605 A.2d 3, at *8 ("As to [the shooting victim], this incident [a shooting] is a happening by chance, unusual, fortuitous and not anticipated. Consequently, the Court finds that [the insured] has met his burden of proof that an occurrence took place within the coverage section."); *Camac*, 698 A.2d at 397 (an intentional attack was an accident from the victim's point of view because "the plaintiff was slugged by the defendant while at the urinal on personal business.   It is not usual or expected to be struck at such a time."); *Nationwide Mut. Fire Ins. v. Smith*, 1998 WL 433941, *3 (Del. Super. Apr. 2, 1998) (in holding that there was an 'occurrence' the Court reasoned: "from [shooting victim's] viewpoint, it certainly would not be usual nor would it be expected that he would be shot by a heretofore loving relative.").

[96] Summary Judgment Hearing Transcript, at 27.

[97] *Korn*, 210 F.Supp.3d at 618.

[98] *Id.* at 619.

Underlying Complaint alleges negligence, the alleged conduct includes an 'occurrence.'[99]

For the foregoing reasons, this Court finds that the Underlying Complaint establishes that Plaintiff is entitled to a defense by Defendant under the definition of an insured employee for an occurrence, unless a policy exclusion applies.

Having determined that Plaintiff is an insured, this Court must now determine whether the Intentional Acts Exclusion and/or the Sexual Misconduct Exclusion extinguish Defendant's duty to defend Plaintiff. For the following reasons, neither the Intentional Acts Exclusion or the Sexual Misconduct Exclusion allow Defendant to avoid its duty to defend.

The Superior Court has held that "in order to avoid the duty to defend, the insurer must demonstrate that the allegations of the underlying complaints are solely and entirely within specific and unambiguous exclusions from coverage."[100] "The

---

[99] Defendant cites *McAlley v. Selective Ins. Co. of America*, 2011 WL 601662 (Del. Super. Feb. 16, 2011) to support his argument that an 'accident' does not include the alleged conduct in the instant case. In *McAlley*, the Delaware Superior Court held that an accident did not occur because the alleged acts were intentional. However, *McAlley* is distinguishable from the instant case because in *McAlley* the insurance policy defines 'occurrence' as: "an *accident*, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the *standpoint of the insured*" (emphasis added). The Court in *McAlley* was precluded from taking the victim's viewpoint into account if the insured intended or expected the injury. In the instant case, there is no language in the definition of 'occurrence' that requires that the bodily injury not be intended by the insured.

[100] *Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690 at *8 (internal quotation marks removed).

burden is on the insurer to establish that policy exclusions or exemptions apply in a particular case, and that they are subject to no other reasonable interpretation."[101] Moreover, under Delaware law, "if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises."[102]

Although the Underlying Complaint alleges negligence (Gross Negligent Infliction of Emotional Distress and Gross Negligence), Defendant contends that the Intentional Acts Exclusion should extinguish its duty to defend because those allegations of negligence in the Underlying Complaint are merely "clever pleading" intended to trigger the duty to defend and that "*every single one of the factual allegations* ... allege criminal, intentional sexual harassment."[103] Defendant asserts that *McAlley v. Selective Ins. Co. of Am.*[104] is "[d]ispositive on this issue"[105] because that case held that "[t]he coverage determination must be made based on the facts alleged in the Complaint, not the manufactured claims of a Plaintiff seeking to implicate coverage by clever pleading."[106] As such, Defendant argues that even if

---

[101] *Id.*

[102] *WoodSpring Hotels LLC* 2018 WL 2085197 at *8.

[103] Defendant's Answering Brief in Opposition to Plaintiff's Motion for Reargument, at 16 (emphasis in original).

[104] *McAlley v. Selective Ins. Co. of Am.*, 2011 WL 601662 at *3 (Del. Super. Feb. 16, 2011).

[105] Defendant's Answering Brief in Opposition to Plaintiff's Motion for Reargument, at 16.

[106] *Id.* at 16, quoting *McAlley*, 2011 WL 601662 at *3.

"negligence" is included "as a legal theory in the Underlying Action, if all of the *factual allegations* relate to intentional conduct, the Intentional Acts Exclusion bars coverage."[107]

However, *McAlley* is distinguishable from the instant case. Although *McAlley* involved a teacher who was accused of raping a student but the underlying complaint alleged negligence, rape was statutorily defined as intentional. Citing 11 *Del. C.* §§ 770-773, the Court in *McAlley* stated that because rape was intentional conduct there was no duty to defend, despite that fact that the underlying complaint alleged negligence.[108] The Court in *McAlley* held:

> Apparently, the plaintiffs in the underlying action sought to trigger coverage by *claiming* negligence even though they alleged not a single *fact* to support this claim. The coverage determination must be made based on the facts alleged in the Complaint, not the manufactured claims of a plaintiff seeking to implicate coverage by clever pleading. According to the express provisions of the Selective policy, in the absence of allegations of accidental conduct in the Complaint, the duty to defend is not triggered.[109]

---

[107] *Id.* (emphasis in the original).

[108] *McAlley*, 2011 WL 601662 at *3 (Citing 11 *Del. C.* §§ 770-773, the Court held that "[r]ape is intentional conduct.").

[109] *Id.*

Here, the Underlying Complaint alleges Gross Negligent Infliction of Emotional Distress and Gross Negligence.[110] The Underlying Complaint alleges that Plaintiff, a teacher, "put his arm around [the student] and touched her several times at school and on school property, which was unwanted and made her feel scare [sic] and uncomfortable."[111] The Underlying Complaint also alleges that Plaintiff "acted with gross negligence in that he knew or should have known that his conduct toward [the student] would be offensive to her..."[112] It also alleges that the student suffered injuries, such as sweating, racing heart, hyper-arousal, and nervousness.[113] "Under well-settled Delaware law, a teacher has a duty to exercise due care to provide for the safety of his or her students and to protect those students."[114] These allegations potentially satisfy the elements of negligent infliction of emotional distress and do not trigger the Intentional Acts Exclusion.

The second exclusion in the insurance policy, in the instant case, is the Sexual Misconduct Exclusion. Plaintiff argues that the Sexual Misconduct Exclusion does

---

[110] The elements of negligent infliction of emotional distress are: (1) negligence causing fright to someone; (2) that the plaintiff was within the "zone of danger"; and (3) that the plaintiff suffered physical harm as a result. *Spence v. Cherian*, 135 A.3d 1282, 1289-90 (Del. Super. May 20, 2016).

[111] Underlying Complaint, at paragraph 15.

[112] *Id.* at paragraph 58.

[113] *Id.* at paragraphs 30-37.

[114] *Tews v. Cape Henlopen Sch. Dist.*, 2013 WL 1087580 at *4 (Del. Super. Feb. 14, 2013).

33

not apply because not all of the alleged acts in the Underlying Complaint are sexual in nature. Defendant challenges that position and cites Paragraph 18 of the Underlying Complaint which alleges that "[Plaintiff's] entire course of behavior implied sexual innuendo, or directly stated it."[115]

While the course of behavior arguably implies or directly states sexual innuendo, several of the factual allegations in the Underlying Complaint, viewed separately, could be interpreted as non-sexual in nature. For example, it is alleged that Plaintiff told Student that he was receiving treatment for his anger problem which could separately be interpreted as non-sexual coercion or conduct.[116] Moreover, at the hearing on the Motion for Reargument, Defendant conceded that it was theoretically possible that if examined individually some of the alleged acts could be interpreted as non-sexual.

Furthermore, the Underlying Complaint alleges several allegations pertaining to the effect of Plaintiff's alleged conduct on Student without stating that the conduct was of a sexual nature. However, allegations of implied sexual innuendo could arguably be the Student's interpretation or perception. It does not establish as a matter of law that all the factual allegations alleged Sexual Misconduct.

---

[115] See Underlying Complaint, at paragraph 18; Defendant's Reply Brief in Further Support of its Motion for Reargument, at 4.

[116] Underlying Complaint, at paragraph 23.

34

Therefore, because the Underlying Complaint is subject to more than one interpretation (whether all the acts were of a sexual nature or some of the alleged acts were of a non-sexual nature) the Court finds that, giving credence to the allegations, there is an ambiguity. Where an ambiguity exists in the pleadings the Court must resolve the ambiguity against the insurance company.[117] Therefore, this Court finds that the Underlying Complaint alleges acts that could be conduct other than sexual misconduct.

In addition, it is not clear that implied "sexual innuendo" rises to the level of sexual misconduct as the term is used in the insurance policy.[118] The insurance policy does not define the term 'sexual misconduct.' As with the pleadings, "any ambiguity in the policy will be construed against the insurer."[119] As such, this Court

---

[117] *Continental Casualty. Co.* 317 A.2d at 105 ("Any ambiguity in the pleadings should be resolved against the carrier.").

[118] Sexual Misconduct and Molestation Liability Exclusion:

> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:
> 1. Any actual or alleged sexual misconduct or sexual molestation of any person; and
> 2. Any allegations relating thereto that:
>    a. An insured negligently employed, investigated, trained, supervised, reported to proper authorities or failed to so report, or retained a person whose conduct would be excluded by 1. above, or
>    b. Are based on an alleged practice, custom or policy, including but not limited to any allegation that a person's civil rights have been violated.

[119] *Regis Ins. Co. v. Graves*, 2005 WL 273239 at *2 (Del. Super. Jan. 28, 2005).

finds that the Underlying Complaint alleges acts that could be outside the scope of the Sexual Misconduct Exclusion.[120]

To avoid its duty to defend under the Sexual Misconduct Exclusion, Defendant must show that there is no other reasonable interpretation of the alleged acts in the Underlying Complaint other than sexual misconduct, sexual molestation, or some other sexual activity. Here, Defendant has failed to show "as a matter of law that there is no possible factual or legal basis upon which the insurer might eventually be obligated to indemnify the insured."[121]

Therefore, because it has not been shown that each allegation of the Underlying Complaint was either an intentional act or an act of sexual misconduct and because at least one of the allegations potentially supports a claim under the insurance policy, Defendant cannot rely on the Intentional Acts Exclusion and/or Sexual Misconduct Exclusion to avoid its duty to defend.[122]

---

[120] Moreover, in *Sherman*, 190 A.3d at 174, in the context of the third prong of §228, the Court recognized the existence of mixed motives. The Court held that where mixed motives are possible the issue is not to be decided by the Court. Here, the factual allegations in the Underlying Complaint could be interpreted as having mixed motivation. As such, the Court cannot decide as a matter of law that the factual allegations exclusively allege conduct of a sexual nature.

[121] *Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690, at *8 (emphasis added).

[122] *Id.* ("[a]n insurer then can be excused from its duty to defend *only* if it can be determined as a matter of law that there is no possible factual or legal basis upon which the insurer might eventually be obligated to indemnify the insured.").

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**; Defendant's Motion of Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

Diane Clarke Streett, Judge

Original to Prothonotary

cc: Lisa C. McLaughlin, Esquire
    Daniel A. Griffith, Esquire