# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NOBLE EAGLE SALES, LLC d/b/a SHOOTER'S CHOICE, A Delaware Limited Liability Company, | ) ) ) ) | |
| | ) | C.A. No. K22C-03-022 RLG |
| Plaintiff, | ) ) | |
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, SELECTIVE INSURANCE COMPANY OF AMERICA, a New Jersey Corporation, WILLIAMS INSURANCE AGENCY, INC., a Delaware Corporation, MCSWEENY AGENCY, LLC, a New Jersey limited liability company, ANTHONY DIMARZO, and SETH COSTELLO. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted:  February 2, 2024
Decided:  June 4, 2024

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Defendant's Motion for Summary Judgment – DENIED.*
*Upon Plaintiff's Cross Motion for Partial Summary Judgment – GRANTED.*


Catherine M. Cramer, Esquire, Baird Mandalas Brockstedt & Federico, LLC, Wilmington, Delaware.  *Attorney for Plaintiff.*

William T. Mandia, Esquire (argued) and Joelle E. Polesky, Esquire, Stradley, Ronon, Stevens & Young, LLP, Wilmington, Delaware.  *Attorneys for Defendants MESA Underwriters Specialty Insurance Company and Selective Insurance Company of America.*

**GREEN-STREETT, J.**

1

## I.    Introduction

Plaintiff, Noble Eagle Sales, LLC d/b/a Shooter's Choice ("Noble Eagle"), operates a shooting range in Dover, Delaware.[1]  A patron of that shooting range used one of the range's guns to commit suicide.[2]  His family and estate subsequently sued Noble Eagle.[3]  Noble Eagle previously obtained insurance coverage from Defendant, Mesa Underwriters Specialty Insurance Company ("MUSIC"), and requested coverage for the lawsuit under that policy.[4]  MUSIC denied coverage, citing an exclusion within the insurance policy.[5]  Noble Eagle filed the instant action to compel MUSIC to defend and indemnify Noble Eagle.[6]  Following discovery, the parties filed cross motions for summary judgment, seeking a decision from this Court on whether MUSIC must defend and indemnify Noble Eagle.[7]

The core of both parties' arguments centers on an exclusion found within the insurance policy excluding coverage for bodily injuries caused by sporting

---

[1] Compl. at 2, D.I. 1.

[2] Id. at 10.

[3] See Aanal Patel, et al., Plaintiffs, v. Shooter's Choice, Inc., et al., Defendants, C.A. No. K21C-04-025 RLG.

[4] Def.'s Mem. in Supp. of Mot. for Summ. J. at 1, D.I. 76.

[5] Id.

[6] Compl. at 3, D.I. 1.

[7] Opening Br. in Supp. of Pl.'s Mot. for Summ. J. at 4, D.I. 77.

equipment rented by Noble Eagle.[8]  Noble Eagle argues the exclusion does not clearly define "sporting equipment," rendering the exclusion ambiguous as to whether a firearm falls within the exclusion.[9]  It posits that, as the law requires interpreting an ambiguous insurance exclusion against the insurer, the insurance policy should be construed against MUSIC.[10]

MUSIC contends that the exclusion's plain meaning clearly conveys what it excludes, and thus cannot be ambiguous.[11]  Absent any ambiguity, MUSIC asserts the exclusion must be applied and enforced in this case.[12]  For the reasons outlined below, the Court finds the term "sporting equipment" is ambiguous.  Thus, the sporting equipment rental exclusion cannot be enforced in the context of this specific case.  Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED**, and Defendant's Motion for Summary Judgment is **DENIED**.

---

[8] Id. at 6.

[9] Id. at 16.

[10] Id. at 14-15.

[11] Def.'s Mem. in Supp. of Mot. for Summ. J. at 14-15, D.I. 76.

[12] Id.

3

## II. **Factual and Procedural Background**

Noble Eagle operates a business in Dover, Delaware comprised of a shooting range and a retail firearms store.[13] Patrons of the shooting range can rent firearms, safety glasses, and ear plugs, as well as purchase ammunition for use in the shooting range.[14] When a patron rents time in the shooting range, she is not charged until she has completed her session and exited the range.[15]

Noble Eagle purchased a commercial general liability insurance policy from MUSIC covering the shooting range and firearm store (the "Policy"), effective April 15, 2020 through April 15, 2021.[16] The premium payment Noble Eagle paid for the year Policy totaled $13,502.27.[17] The Policy covers, among other things, bodily injuries that occur at the shooting range.[18]

On April 24, 2020, Aniket Patel procured a firearm from Noble Eagle, entered the shooting range, and used the firearm to commit suicide.[19] On April 27, 2020,

---

[13] Opening Br. in Supp. of Pl.'s Mot. for Summ. J. at 5, D.I. 77.

[14] Id.

[15] Tr. of Oral Arg. at 5, D.I. 84.

[16] Opening Br. in Supp. of Pl.'s Mot. for Summ. J. at 5, D.I. 77.

[17] Id. at 6.

[18] Id.

[19] Id. at 5.

4

Noble Eagle filed a claim under the Policy, seeking defense and indemnity.[20]

MUSIC denied Noble Eagle's claim.[21] Although the Policy covered bodily injuries occurring at Noble Eagle's business, MUSIC cited an exclusion within the policy as grounds to deny coverage.[22] The "Rental of Sporting Equipment Exclusion" (the "Rental Exclusion") reads:

> In consideration of the premium charged, it is understood and agreed that this policy specifically excludes and does not extend to or provide coverage, indemnity, or defense costs for bodily injury or property damage arising out of the use of sporting equipment rented out by the insured, the insured's employees or other persons on the insured's premises. Sporting equipment, for the purpose of this endorsement, does not include golf or tennis equipment.[23]

Mr. Patel's estate and family filed suit against Noble Eagle on April 23, 2021, asserting claims of negligence, wrongful death, negligent entrustment, and negligent training and supervision.[24] After being served with the complaint, Noble Eagle renewed its request for MUSIC to provide defense and indemnity against those claims.[25] MUSIC again denied coverage, asserting that, "as Shooter's Choice is a

---

[20] Opening Br. in Supp. of Pl.'s Mot. for Summ. J. at 8, D.I. 77.

[21] Id.

[22] Id.

[23] Def.'s Mem. in Supp. of Mot. for Summ. J. at 4, D.I. 76.

[24] First Am. Compl. at 13, D.I. 48.

[25] Def.'s Mem. in Supp. of Mot. for Summ. J. at 4, D.I. 76.

business that rents firearms for the sport of target shooting, the Rental of Sporting Equipment Exclusions applies to bar coverage."[26]

Noble Eagle then filed the instant action, seeking clarity and a declaration from the Court regarding MUSIC's defense and indemnity obligations to Noble Eagle.[27] The parties filed cross motions for summary judgment, asking this Court to determine if the Rental Exclusion of the Policy bars coverage in this case. Both parties agree that the only remaining dispute between them is disagreement regarding the Policy's terms and conditions.

## III.   <u>**Parties' Contentions**</u>

Noble Eagle raises two arguments in its motion for summary judgment. First, it argues the Rental Exclusion does not clearly define the term "sporting equipment."[28] Absent a definition of one of the key terms of the exclusion, Noble Eagle posits the exclusion translates ambiguously regarding its application to firearms generally – and, more specifically, the firearm used in Mr. Patel's case.[29]

---

[26] <u>Id</u>. at 5.

[27] <u>Id</u>. at 4.

[28] Opening Br. in Supp. of Pl.'s Mot. for Summ. J. at 16, D.I. 77.

[29] <u>Id</u>.

If the Court deems the Rental Exclusion ambiguous, Noble Eagle contends Delaware law requires construing the meaning of the Rental Exclusion against MUSIC.[30]

Second, Noble Eagle argues Mr. Patel did not rent the firearm.[31] Noble Eagle did not charge Mr. Patel, or his estate, for use of the firearm.[32] Noble Eagle never received any payment for allowing Mr. Patel to borrow the gun, and the gun has not been returned to Noble Eagle.[33] Noble Eagle maintains that, given those facts, no rental occurred.[34] Thus, it contends the Rental Exclusion cannot apply.[35]

MUSIC counters that the Rental Exclusion precludes coverage because it clearly and unambiguously applies to the firearm used by Mr. Patel.[36] MUSIC emphasizes the "plain and ordinary" definition of sporting equipment encompasses the firearm at issue in this case.[37] As the Rental Exclusion lacks ambiguity, and applies to any injury arising from a rented firearm, MUSIC asserts the Rental

---

[30] Id.

[31] Id. at 18.

[32] Id.

[33] Id.

[34] Id.

[35] Id.

[36] Def.'s Mem. in Supp. of Mot. for Summ. J. at 11, D.I. 76.

[37] Id.

7

Exclusion bars coverage.[38]  MUSIC further contends that Mr. Patel clearly rented

the firearm, and to interpret his transaction with Noble Eagle differently would allow

Noble Eagle to invalidate the Rental Exclusion at will.[39]

## IV.   Standard of Review

This Court grants summary judgment if "there is no genuine issue as to any

material fact and … the moving party is entitled to a judgment as a matter of law."[40]

"Where cross motions for summary judgment are filed on a particular issue and

neither party argues the existence of a genuine issue of material fact thereon, the

Court may consider the motions as a stipulation for decision on the record submitted

by the parties."[41]  "The standard for summary judgment is not altered because the

parties have filed cross-motions for summary judgment."[42]  The Court must still

determine if any genuine factual disputes exist.[43]

---

[38] Id.

[39] Id. at 19.

[40] Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co., 2021 WL 4130631, at *9 (Del. Super. Sept. 10, 2021) (internal quotations omitted) (quoting Del. Super. Ct. Civ. R. 56(c)).

[41] Id. (citing Del. Super. Ct. Civ. R. 56(h)).

[42] Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1050 (Del. Super. 2001) (internal quotations omitted) (quoting Haas v. Indian River Vol. Fire Co., 2000 WL 1336730, at *3 (Del. Ch. Aug. 14, 2000)).

[43] United Vanguard Fund, Inc. v. TakeCare, Inc., 693 A.2d 1076, 1079 (Del. 1997).

## V.    Discussion

As a threshold matter, the Court finds no material facts remain in dispute. Both parties agree with the timeline of events leading to Mr. Patel's death, and neither party disputes that the Policy covered the date in question. The only issue remaining before the Court concerns whether the Rental Exclusion bars coverage in the instant case. Given there are no material facts in dispute, summary judgment is appropriate at this stage.[44]

### A.    The Standard for Insurance Contract Interpretation

This Court's "interpretation of a contract must rely on a reading of all pertinent provisions of the policy as a whole, and not on any single passage in isolation."[45] "Contracts are to be interpreted in a way that does not render any provision illusory or meaningless."[46] Clear and unambiguous contract terms are given their plain meaning, and the Court cannot "destroy or twist policy language under the guise of construing it."[47] Ambiguity exists within a contract "when the provisions in controversy are reasonably or fairly susceptible of different

---

[44] Del. Super. Ct. Civ. R. 56(c).

[45] O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 287 (Del. 2001).

[46] Id. (internal quotations omitted) (quoting Sonitrol Holding Co. v. Marceau Investissements, 607 A.2d 1177, 1183 (Del. 1992)).

[47] Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992).

9

interpretations[,] or may have two or more different meanings."[48]  If the Court can determine the meaning of a contract from "knowledge of the simple facts on which, from the nature of language in general, its meaning depends," the Court must find the contract unambiguous.[49]

When ambiguity does exist, "the language of an insurance contract [must] be construed most strongly against the insurance company that drafted it."[50]  Further, "contracts should be read to accord with the reasonable expectations of a reasonable purchaser."[51]  To avoid its duty to defend the insured, "the insurer must demonstrate that the allegations of the underlying complaints are solely and entirely within specific and unambiguous exclusions from coverage."[52]  The burden lies with the insurer to show an exclusion unambiguously applies in a particular case to bar coverage.[53]  Thus, MUSIC must show the Rental Exclusion unambiguously applies.

---

[48] Id.

[49] Id.

[50] Id. (citing Steigler v. Insurance Company of North America, 384 A.2d 398, 400 (Del. 1978)).

[51] Id. (citing Steigler, 384 A.2d at 401).

[52] Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Rhone-Poulenc Basic Chemicals Co., 1992 WL 22690, at *8 (Del. Super. Jan. 16, 1992).

[53] Smith v. Liberty Mut. Ins. Co., 201 A.3d 555, 571 (Del. Super. 2019).

**B.** **Noble Eagle rented the firearm to Mr. Patel**

The Court first turns to Noble Eagle's assertion that, as it never collected any money from Mr. Patel, the transaction involving the firearm does not qualify as a rental.[54] Noble Eagle correctly notes the Rental Exclusion fails to define the term "rented out."[55] Noble Eagle argues a rental requires an exchange of money.[56] As Mr. Patel never paid for the use of the firearm, Noble Eagle asserts no rental occurred.[57]

"The Delaware Supreme Court has instructed courts to use dictionary definitions as a guide when determining the plain meaning of undefined contract terms."[58] Merriam-Webster defines "rented" as "to grant the possession and enjoyment of in exchange for rent; to take and hold under an agreement to pay rent."[59] Noble Eagle does not dispute that, had Mr. Patel walked out of the shooting range alive, he would have owed an obligation to pay for the time he spent

---

[54] Pl.'s Opening Br. in Supp. of Pl.'s Mot. for Summ. J. at 18, D.I. 77.

[55] Id.

[56] Id.

[57] Id.

[58] Harper v. State Farm Mut. Auto. Ins. Co., 2022 WL 17494200, at *3 (Del. Super. Dec. 8, 2022).

[59] *Rented*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/rented (last visited Apr. 16, 2024).

11

possessing the firearm.[60] Noble Eagle generated a receipt for the transaction, listing a charge of $15.00 for "range gun rental."[61] Noble Eagle also confirmed it made the voluntary decision not to pursue Mr. Patel's estate to recover the money owed for the gun rental.[62]

The transaction between Mr. Patel and Noble Eagle involving the firearm unquestionably fits into the definition of "rented out." Once Mr. Patel incurred the obligation to pay for possessing the firearm, a rental occurred. Noble Eagle's choice not to charge Mr. Patel's estate does not transform the transaction into something other than a rental. Finding otherwise would allow Noble Eagle to circumvent Policy exclusions by choosing not to charge rent following any incident that may otherwise trigger an exclusion. Accordingly, for the purposes of applying the Rental Exclusion, the firearm in this case qualifies as "rented out."

## C. The Policy is ambiguous as to whether a firearm falls under "Sporting Equipment"

The Court must next determine if the firearm rented out by Noble Eagle unambiguously falls into the category of "sporting equipment" as outlined by the Rental Exclusion. Noble Eagle admits their shooting range sometimes hosts

---

[60] Tr. of Oral Arg. at 26, D.I. 84.

[61] Def.'s Mem. in Supp. of Mot. for Summ. J. at 18, D.I. 76.

[62] Id.; see also Tr. of Oral Arg. at 12, D.I. 84.

12

shooting sports, and concedes firearms can be "sporting equipment."[63] As the Policy does not define "sporting equipment," Noble Eagle asserts reasonable minds could differ as to when a firearm qualifies as "sporting equipment."[64] Noble Eagle argues firearms are not always "sporting equipment," and that the distinction balances on the firearm's intended use at that particular time.[65] Noble Eagle lists several other uses for firearms at their shooting range, including training by law enforcement, prospective buyers testing a gun, and gun safety training.[66] It posits that, when firearms are used in those contexts, firearms are not "sporting equipment."[67] As Mr. Patel did not use the firearm to participate in sports shooting, Noble Eagle contends the firearm he used cannot be considered "sporting equipment" under the Rental Exclusion.[68]

MUSIC's position centers on the fact that Noble Eagle only rents out "guns, protective eyewear, and earplugs."[69] MUSIC argues that, if firearms are not

---

[63] Tr. of Oral Arg. at 12, D.I. 84.

[64] Id.

[65] Id.

[66] Id.

[67] Id.

[68] Id.

[69] Id. at 6.

13

categorized as "sporting equipment," the Rental Exclusion becomes "meaningless."[70] As firearms often function as equipment for shooting sports, MUSIC maintains the Rental Exclusion clearly and unambiguously includes firearms within its definition of "sporting equipment."[71]

Neither side disputes that firearms *can be* used as sporting equipment. Additionally, the parties do not dispute that Mr. Patel's use of the firearm does not qualify as a sport. The core question the Court must answer hinges on whether firearms are always – definitionally – sporting equipment. Guided by Delaware decisional law, the Rental Exclusion can only be enforced if the sole reasonable interpretation of "sporting equipment" encompasses all firearms Noble Eagle rents out, regardless of the purpose for which the customer rents the firearm.

Merriam-Webster defines a "firearm" as "a weapon from which a shot is discharged by gunpowder, usually used of small arms."[72] The dictionary definitions of "sporting" and "equipment," cited by MUSIC, do not provide clarity, other than to suggest that anything used in a sport can be sporting equipment depending on the

---

[70] Id. at 9.

[71] Id.

[72] *Firearm*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/firearm (last visited Apr. 16, 2024); see also *Gun*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/gun (last visited Apr. 16, 2024) ("a piece of ordnance usually with high muzzle velocity and comparatively flat trajectory; a portable firearm; a device that throws a projectile").

context.[73]  The parties do not dispute that firearms function as sporting equipment at times.  A definition, however, that allows for anything conceivably used in a sport to be classified as "sporting equipment," and thus excluded under the Rental Exclusion, constitutes far too broad a definition.

Thus, this Court must determine if the only reasonable interpretation of "sporting equipment" under the Policy *always* includes all firearms rented out by Noble Eagle.  One reasonable interpretation certainly includes all firearms as "sporting equipment," as presumably all firearms can be used in some type of target-shooting sport.  Another reasonable interpretation, however, would not apply to firearms that are much less frequently used as equipment in sport shooting.  The Court cannot determine from the plain language of the policy where to draw the line between firearms that *can be* sporting equipment, and firearms that are *always* sporting equipment.  MUSIC, as the insurer, stood as the party best positioned to make that delineation when drafting the Policy.  MUSIC's failure to do so renders the Rental Exclusion's application to firearm rentals ambiguous.

The Court also finds ambiguity regarding what shooting activities should be considered sports under the Policy.  Aside from participating in a target shooting

---

[73] See *Sporting*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/sporting (last visited Apr. 16, 2024) ("of, relating to, used, or suitable for sport"); see also *Equipment*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/equipment (last visited Apr. 16, 2024) ("the set of articles or physical resources serving to equip a person or thing such as the implements used in an operation or activity").

15

competition, or practicing for one, there are myriad reasons a customer may wish to rent time with a firearm on a shooting range. Practice for self-defense; acclimating to a new firearm; testing out a firearm to purchase; law enforcement training; and training as part of a firearm class are all possible reasons to rent a firearm. Those reasons do not fit unambiguously into the definition of sports, and thus the equipment used in those activities does not fit squarely into the definition of "sporting equipment."

As the Rental Exclusion contains ambiguity, it must be construed most strongly against MUSIC. The Court cannot conclude all firearms are unequivocally and definitionally "sporting equipment." Nor can the Court conclude all activities that occur at a shooting range are sports. MUSIC has not carried its burden to demonstrate the Rental Exclusion bars coverage in this case.

The record reflects and supports that MUSIC was aware, at the time of issuance of the Policy to Noble Eagle, that Noble Eagle constituted "a business that rents firearms for the sport of target shooting." Noble Eagle's reasonable expectation – as a shooting range that paid nearly $14,000 for a liability policy – was to insure its establishment against liability involving firearms. MUSIC, as evidenced by the Policy language, clearly attempted some definition of "sporting equipment," as it carved out explicitly golf and tennis equipment.

16

While the Court levies no allegation or accusation against MUSIC, this litigation certainly highlights the benefit to MUSIC of ambiguity. Ambiguity amounts to broader coverage denial. This Court cannot allow MUSIC to take that position, particularly when Delaware law dictates construal against MUSIC for precisely this reason.

## VI.  Conclusion

A gun or firearm is always a weapon; foundationally, elementally, *hoc est quod est* (it is what it is). A gun or firearm can morph into sporting equipment, but does not cease to exist as a weapon – and certainly does not constitute sport equipment definitionally. Given that the Rental Exclusion failed to bar coverage unambiguously, Noble Eagle is entitled to coverage, defense, and indemnity for the incident involving Mr. Patel. Accordingly, Noble Eagle's Motion for Summary Judgment is **GRANTED** and MUSIC's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

17