**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| M&B ENTERPRISE, LLC and FIE HOLDINGS, LLC, | ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| v. | ) ) | C.A. No.: N23C-10-044 EMD CCLD |
| MICHAEL J. KLEIN, | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

Submitted: July 21, 2025
Decided: October 28, 2025

*Upon Plaintiffs' Motion for Judgment on the Pleadings*
**GRANTED**

Benjamin P. Chapple, Esquire, John T. Miraglia, Esquire, Reed Smith LLP, Wilmington, Delaware, Locke Beatty, Esquire, McGuireWoods LLP, Charlotte, North Carolina. *Attorneys for Plaintiffs/Counterclaim Defendants M&B Enterprise, LLC and FIE Holdings, Inc.*

Kevin Mangan, Esquire, Zachary Murphy, Esquire, Womble Bond Dickinson (US) LLP, Wilmington, Delaware, Pressly M. Millen, Esquire, Womble Bond Dickinson (US) LLP, Raliegh, North Carolina. *Attorneys for Defendant/Counterclaim Plaintiff Michael J. Klein.*

**DAVIS, J.**

## I.       INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. Plaintiffs M&B Enterprise, LLC ("M&B") and FIE Holdings, LLC ("FIE Holdings") filed suit against Defendant Michael J. Klein ("Mr. Klein") seeking a declaratory judgment.[1] M&B and FIE Holdings filed their Complaint (the "Complaint") against Mr. Klein on October 5, 2023.[2]

---

[1] *See* Complaint ¶¶ 57-63 (hereinafter "Compl.") (D.I. No. 1).
[2] *See id*.

Mr. Klein filed a Motion to Dismiss the Complaint on December 14, 2023. The Court denied the Motion to Dismiss on August 1, 2024.[3] Mr. Klein filed his Answer to the Complaint (the "Answer"), defenses, and Counterclaim (the "Counterclaim") on August 12, 2024.[4] In the Answer, Mr. Klein pleads that; (i) the Court lacked subject matter jurisdiction; (ii) M&B and FIE Holdings claims are barred by estoppel, laches, unclean hands, and/or waiver; and (iii) Mr. Klein reserved the right to amend his Answer and assert defenses as they may become available.[5] Mr. Klein asserts the following Counterclaims: (i) Count I: Breach of Contract against FIE Holdings; and (ii) Count II: Breach of Contract against M&B.[6] M&B and FIE Holdings separately answered the Counterclaims on September 3, 2024.[7]

M&B and FIE Holdings filed their Motion for Judgment on the Pleadings (the "Motion") on December 26, 2024.[8] Mr. Klein filed his Answering Brief (the "Answer Brief") in opposition to the Motion on February 7, 2025.[9] M&B and FIE Holdings filed their Reply Brief (the "Reply Brief") in support of the Motion on March 7, 2025.[10] The Court held a hearing on the Motion on July 21, 2025. At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons set forth below, the Court **GRANTS** the Motion.

---

[3] *See* Order Denying Motion to Dismiss the Amended Complaint (D.I. No. 24).
[4] *See* Defendant's Answer, Defenses, and Counterclaims (hereinafter "Answer," "Defenses," or "Countercl.," respectfully) (D.I. No. 26).
[5] *See id.* at 27.
[6] *See id*. at 31-32.
[7] *See* FIE Holdings, LLC's Response to Defendant's Counterclaim (D.I. No. 27); *see also* M&B Enterprise, LLC's Response to Defendant's Counterclaim (D.I. No. 28).
[8] *See* Plaintiffs' Motion for Judgment on the Pleadings (hereinafter, "Mot.") (D.I. No. 29).
[9] *See* Defendant's Answering Brief in Opposition of Motion for Judgment on the Pleadings (hereinafter "Opp'n") (D.I. No. 32).
[10] *See generally*, Plaintiff's Reply Brief (hereinafter "Reply Br.") (D.I. No. 33).

## II.     RELEVANT FACTS

### A. THE PARTIES

M&B is a Connecticut limited liability company.[11]  FIE Holdings is a Delaware limited liability company and the sole member of M&B.[12]

Mr. Klein is a resident of the Town of Orange, Connecticut.[13]  Mr. Klein is the former part direct owner and chief executive officer of M&B.[14]

### B. NATURE OF THE DISPUTE

### 1.  *The Applicable Agreements*

On April 7, 2022 (the "Closing Date"), Mr. Klein sold his ownership interest in M&B in an arms-length transaction to FIE Holdings, a company formed for the purpose of acquiring and owning M&B.[15]  As part of the sale, Mr. Klein executed a Membership Interest Purchase Agreement (the "Purchase Agreement").[16]  Mr. Klien expressly released M&B and FIE Holdings in the Purchase Agreement from any claims or liabilities related to any fact, act, or event occurring prior to the Closing Date.[17]

Mr. Klein also executed an employment agreement with M&B on the Closing Date (the "Employment Agreement").[18]   Through this Employment Agreement, Mr. Klein expressly released M&B and FIE Holdings from all claims arising from or related to his employment with M&B prior to the Closing Date.[19]

---

[11] *See* Compl. ¶ 9.
[12] *Id*. ¶ 10.
[13] *See id*. ¶ 11.
[14] *See id.*
[15] *See id*. ¶ 1.
[16] *Id*. ¶ 5.
[17] *Id*.
[18] *Id*. ¶ 6.
[19] *Id*.

3

The parties executed several additional agreements on the Closing Date to facilitate the operation of M&B going forward. These agreements included the Employment Agreement, the Amended & Restated Operating Agreement of M&B Enterprise, LLC (the "M&B Operating Agreement"), and the Amended & Restated Limited Liability Company Agreement of FIE Holdings LLC (the "FIE Holdings LLC Agreement").[20]

## 2. *The Releases*

Mr. Klein granted M&B and FIE Holdings a broad release of claims arising from facts, acts, and events that occurred prior to the Closing Date (the "Purchase Agreement Release") in the Purchase Agreement.[21] Purchase Agreement Section 5.6 sets out four limited carveouts, none of which are relevant in this civil action.[22] Specifically, Section 5.6 provides:

> Each Seller, on a several basis, for itself and its predecessors, successors, personal representatives, and assigns (each, a "Releasing Party"), as the case may be, hereby irrevocably releases and forever discharges [M&B] and **each of its past, present and future** officers, directors, agents, **members**, partners, managers, customers, vendors, business partners, successors, representatives and assigns, as the case may be (each, a "Releasing Party"), from any and all claims and Liabilities **based upon or related to any fact, thing, act, event, happening, inaction or omission with respect to, arising out of, or attributable to a period at or prior to the Closing** or whatever kind or nature, in law or equity, known or unknown, vested or contingent, suspected or unsuspected, and whether or not concealed or hidden, which ever have or may have existed, or which do exist, that may now **or hereafter at any time be made** or brought against the Released Parties by such Releasing Party.[23]

In Purchase Agreement Section 5.7, the parties agreed to purchase an Employment Practices and a Director and Officer tail insurance policy (the Allied World Insurance Company, Forcefield Private Company Management Liability Package Policy No. 0313-3385 (the "Tail

---

[20] *See id.* ¶ 21.
[21] *Id.* ¶ 29; Compl., Ex. A § 5.6. Exhibit A to the Complaint is the Purchase Agreement (hereafter, "Purchase Ag. at § __").
[22] Purchase Ag. at § 5.6.
[23] *Id.* (emphasis added).

Policy")).[24]  The Tail Policy covers M&B's employment practices and directors and officers prior to the Closing Date.[25]

Purchase Agreement Section 5.7 provides added support that the Purchase Agreement Release releases M&B and FIE Holdings from any financially responsible for the acts of directors and officers prior to the Close Date.  When seeking reimbursement for such acts, a covered party would, to the extent provided therein, look to the Tail Policy.[26]  Section 5.7 provides:

> At the closing, the Company shall obtain, at Sellers' expense, a "tail" insurance policy covering the Company's existing directors and officers for a period of six years after the Closing, the premium for which shall be paid by Sellers.  At the Closing, the Company shall obtain, at Buyer's expense, a "tail" insurance policy covering the Company's existing employment practices for a period of six years after the Closing, the premium for which shall be paid by Buyer.[27]

Section 7.15 states that the terms of the Purchase Agreement and other Transaction Documents supersede any terms in the M&B Operating Agreement.[28]  Section 7.15 specifies that:

> Each Seller (in such Seller's capacity as a member or manager as applicable) hereby waives any provisions of Company's Operating Agreement that are inconsistent with this Agreement and the Transaction Documents….[29]

Mr. Klein signed the Employment Agreement on the Closing Date.[30]  The Employment Agreement conditioned Mr. Klein's continued employment, compensation, benefits, and other consideration on his broad release (the "Employment Agreement Release")[31] to M&B and FIE

---

[24] Purchase Ag. at § 5.7.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.* at § 7.15.
[29] *Id.*
[30] Compl. ¶ 37; Compl., Ex. C.  Exhibit C to the Complaint is the Employment Agreement (hereafter Employ. Ag. at § __").
[31] The Purchase Agreement Release and the Employment Agreement Release will be collectively referred to as the "Releases."

Holdings (the "Employment Agreement Release").[32]  Section 19 of the Employment Agreement

Section 19 sets out the release:

> [Mr. Klein] hereby releases and waives all claims arising from or related to [Mr. Klein's] employment with the Company **or its affiliates** with respect to the time period prior to and through the Closing, except for the payment of any base salary for the period of time from the Company's last payroll date through the date of the Closing.[33]

### 3.  *The Kamenskiy Lawsuit*[34]

Stan Kamenskiy, a current chief technology officer of M&B, was employed prior to the

Closing Date.[35]  On May 15, 2023, Mr. Kamenskiy filed a lawsuit against Mr. Klein in

Connecticut Superior Court (the "Kamenskiy Lawsuit").[36]  The Kamenskiy Lawsuit asserts

claims against Mr. Klein for breach of contract, negligent misrepresentation, intentional

misrepresentation, fraud in the inducement, and promissory estoppel.[37]  Neither FIE Holdings

nor M&B is a defendant in the Kamenskiy Lawsuit.  The Kamenskiy Lawsuit makes no

allegations that Mr. Klein made any of these alleged promises on behalf of FIE Holdings or

M&B.[38]

The Kamenskiy Lawsuit alleges that Mr. Klein made "multiple verbal statements and

written representations" to Mr. Kamenskiy regarding compensation.[39]  The Kamenskiy Lawsuit

contends that Mr. Klein promised Mr. Kamenskiy a five-million dollar payout, a free house, and

a "C level role" in the future.[40]  The Kamenskiy Lawsuit alleges Mr. Klein made these

---

[32] *See* Compl. ¶¶ 37-38; Employ. Ag.
[33] Employ. Ag. at § 19.
[34] Compl., Ex. B.  Exhibit B to the Complaint is the complaint filed in the Kamenskiy Lawsuit (hereafter "KL Compl. ¶__").
[35] Compl. ¶ 22.
[36] *Id.* ¶ 23.
[37] *Id.* ¶ 27.
[38] *Id.* ¶ 28.
[39] KL Compl. ¶ 11.
[40] *Id.*

representations between 2015 and 2021.[41]  The Kamenskiy Lawsuit maintains that these alleged promises—Mr. Klein's alleged refusal to perform them, and Mr. Klein's alleged repudiation of any future obligation—all occurred before the Closing Date.[42]

### 4. *Mr. Klein's Indemnification Demand*

On September 26, 2023, Mr. Klein demanded that M&B and FIE Holdings indemnify him and hold him harmless for the claims asserted in the Kamenskiy Lawsuit.[43]  Mr. Klein also attached a proposed third-party complaint.[44]  Mr. Klein threatened to file this third-party complaint in the Kamenskiy Lawsuit.[45]  Moreover, Mr. Klein warned that he would implead M&B and FIE Holdings into the Kamenskiy Lawsuit.[46]  The third-party complaint outlines Mr. Klein's theory of indemnity from M&B and FIE Holdings.[47]  Mr. Klein states that he seeks indemnity under M&B Operating Agreement Section 6.2, which affords indemnity for members for certain claims.[48]  As to FIE Holdings, Mr. Klein states that he is seeking indemnification solely under FIE Holdings LLC Agreement Section 4.14, which generally provides indemnity for members for certain claims.[49]

### III.  PARTIES' CONTENTIONS

### A.  M&B AND FIE HOLDINGS

M&B and FIE Holdings contend that Mr. Klein granted them a broad release of claims for acts that arose prior to the Closing Date.[50]  As such, M&B and FIE Holdings maintain that

---

[41] *See id.* ¶¶ 8-13.
[42] *Id.* ¶ 16.
[43] *See* Compl. ¶ 41; Compl., Ex. D.
[44] *See id.* ¶ 42; Ex. E.
[45] *See id.*
[46] *See id.*
[47] *See id.*
[48] *See* Compl. ¶ 44; Compl., Ex. F.
[49] *See* Compl. ¶ 43; Compl., Ex. G.
[50] *See* Mot. at 8.

Mr. Klein has released the indemnity claims that he now asserts against M&B and FIE Holdings.[51]

M&B and FIE Holdings also argue that Mr. Klein cannot rely on the M&B Operating Agreement to avoid the release's effect, as the Purchase Agreement's plain language confirms its terms supersede any terms contained in the M&B Operating Agreement.[52]  M&B and FIE Holdings  make a similar argument with respect to the FIE Holdings LLC Agreement. Specifically, M&B and FIE Holdings maintain that this agreement cannot negate the release as FIE Holdings was not in existence when Mr. Klein's alleged conduct gave rise to his demand for indemnification.[53]

M&B and FIE Holdings further contend that because Mr. Klein's releases are enforceable, his Counterclaim must be dismissed.[54]

### B. MR. KLIEN

Mr. Klien contends that a judgment on the pleadings would be premature.  Mr. Klein asserts that, at this early stage of the proceedings, M&B and FIE Holdings impermissibly seek to have inferences drawn in their favor.[55]  Mr. Klein argues that a judgment on the pleadings in inappropriate as the Kamenskiy Lawsuit is vague, lacks detail, and has not yet been resolved.[56] Further, Mr. Klein suggests that the parties' agreements, when read together, create an ambiguity regarding M&B and FIE Holdings indemnification obligations.[57]

---

[51] *See id.*
[52] *See id.* at 8-9.
[53] *See id.* at 9.
[54] *See id.* at 19.
[55] Opp'n at 8.
[56] *See id.* at 10-12.
[57] *See id.* at 12.

8

## IV.    STANDARD OF REVIEW

### A.  MOTION FOR JUDGMENT ON THE PLEADINGS

A party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[58]  In determining a motion under Civil Rule 12(c) for judgment on the pleadings, the Court is required to view the facts pled and the inferences to be drawn from such facts in a light most favorable to the non-moving party.[59]  The Court must take the well-pled facts alleged in the complaint as admitted.[60]  When considering a motion under Civil Rule 12(c), the Court also assumes the truthfulness of all well-pled allegations of fact in the complaint.[61]  The Court must, therefore, accord parties opposing a Civil Rule 12(c) motion the same benefits as a party defending a motion under Civil Rule 12(b)(6).[62]

However, a court will "not rely upon conclusory allegations . . . [and] neither inferences nor conclusions of fact unsupported by allegations of specific facts . . . are accepted as true."[63]  Further, "[a] trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences."[64]  Yet, if the non-moving party "presents any reasonably conceivable set of facts susceptible of proof to

---

[58] Civil Rule 12(c) provides:

*Motion for judgment on the pleadings* — After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[59] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see also Warner Commc'ns, Inc. v. Chris–Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Super.), *aff'd without opinion*, 567 A.2d 419 (Del. 1989).

[60] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.

[61] *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).

[62] *See id.*

[63] *Id.* (internal citations omitted).

[64] *Id.* (internal citations omitted).

support its claim, the motion against it must be denied. A complaint will not be dismissed unless it is clearly without merit. 'Vagueness or lack of detail' is not enough for dismissal."[65]

With these considerations in mind, the Court may grant a motion for judgment on the pleadings only when no material issue of fact exists, and the movant is entitled to judgment as a matter of law.[66]

## B. THE "PLEADINGS" CONSIDERED.

On a Civil 12(c) motion, the Court considers all pleadings, including the complaints, answers, "documents integral to the pleadings," such as those attached as exhibits or incorporated by reference, and facts subject to judicial notice.[67]

## V. DISCUSSION

## A. THE LANGUAGE WITHIN THE DOCUMENTS CONFIRMS THE PARTIES' INTENT TO GRANT RELEASES FOR ANY AND ALL CLAIMS ARISING FROM MR. KLEIN'S ACTIONS PRIOR TO THE CLOSING DATE.

### 1. General Release Language

"Under settled Delaware law, 'a general release… [is] one which is intended to cover everything – what the parties presently have in mind, as well as what they do not have in mind…Such general releases are in common use… Their validity is unchallenged."[68]

The Court finds that the plain language of both the Purchase Agreement Release and the Employment Agreement Release are unambiguous as applied to the facts here. The Court also

---

[65] *Velocity Exp., Inc. v. Office Depot, Inc.*, 2009 WL 406801, at *4 (Del. Super. 2009) (internal citations omitted).

[66] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.

[67] *Jiménez v. Palacios,* 250 A. 3d 814, 827 (Del. Ch. 2019); *accord Patheon Biologics LLC v. Humanigen Inc.*, 2023 WL 5041233, at *1 (Del. Super. July 31, 2023); *see also Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *8 (Del. Super. Aug. 16, 2021) ("[T]he Court can consider, limitedly, documents outside the pleadings but integral to and incorporated referentially into them.").

[68] *See id*. at 10; *see also Corp. Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777, 779 (Del. 2003) (quoting *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982)).

finds that these releases make clear that Mr. Klein granted general releases from any liability resulting from his actions that occurred prior to the Closing Date.

As set out in Purchase Agreement Section 5.6.Mr. Klein agreed to release M&B and FIE Holdings from "any and all claims and liabilities based upon or related to any fact, thing, act, event, happening, inaction, or omission with respect to, arising out of, or attributable to a period at or prior to closing."[69] Similarly, the Employment Agreement provides that Mr. Klein "releases and waives all claims arising from or related to [Klein's] employment with the Company or its affiliates with respect to the time period prior to and through the Closing."[70]

The Court finds that this language unambiguously confirms that Mr. Klein has released claims, to the extent such claims arise from Mr. Klein's employment with M&B, during the "time period prior to and through closing."[71] Moreover, the Court finds that no extrinsic evidence is necessary to interpret and enforce plain language of a contract.[72]

### 2. *The Tail Policy*

The Court also looks to the Purchase Agreement's provisions and notes that the parties considered the possibility that claims may be asserted against M&B's then existing directors or officers, such as Mr. Klein, after the Closing Date. The Tail Policy evidences this inference.[73] The purpose of the Tail Policy is to provide insurance coverage for claims asserted against M&B's then existing directors or officers after the closing date to the extent that liability should

---

[69] Purchase Ag. § 5.6.
[70] Employ. Ag. § 19.
[71] *See id*.
[72] *See US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 WL 3025418, at *8 (Del. Ch. June 18, 2018), *aff'd*, 202 A.3d 510 (Del. 2019)).
[73] Purchase Ag. § 5.7.

11

be borne by someone other than the individual.[74]  The Tail Policy provides insurance coverage for a period of 6 years and is still in effect.[75]

The Court "must construe the agreements as a whole, giving effect to all provisions therein"[76] when determining the parties' intent as expressed in an agreement.  Here, the parties agreed, in Purchase Agreement Section 5.7, that Mr. Klein should look to the Tail Policy, and not the purchasers, for indemnification for any acts committed prior to the Closing Date.[77]  The Tail Policy confirms the parties' intent was to rely on that policy and not M&B or FIE Holdings, should any claims arise out of actions or inactions prior to the Closing Date.

### 3.  *Indemnity Provisions Contained in the M&B Operating Agreement and the FIE Holdings LLC Agreement*

Mr. Klein attempts to avoid the releases' impact by relying on the indemnity provisions in the M&B Operating Agreement and the FIE Holdings LLC Agreement.  Although these indemnification provisions may apply in certain situations, these indemnification provisions do not apply to the facts of this case.

Any reliance on the M&B Operating Agreement fails.  The plain language of the Purchase Agreement makes clear that its terms supersede any conflicting terms contained in the M&B Operating Agreement.[78]  Purchase Agreement Section 7.15 states that: "[e]ach Seller (in such Seller's capacity as a member or manager as applicable) hereby waives any provisions of Company's Operating Agreement that are inconsistent with this Agreement and the Transaction Documents…."[79]  The Purchase Agreement controls if the M&B Operating Agreement's

---

[74] *See id.*
[75] *See id.*
[76] *GMG Cap, Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).
[77] *See* Purchase Ag. § 5.7.
[78] Purchase Ag. § 7.15.
[79] *Id.*

indemnity provision conflicts with the Purchase Agreement's indemnity provisions. Accordingly, Purchase Agreement Section 7.15 operates to confirm that the Purchase Agreement's release controls.[80]

Mr. Klein's reliance on the FIE Holdings LLC Agreement also fails. Mr. Klein relies on FIE Holdings LLC Agreement Section 4.14 to support his indemnification claims. Section 4.14 provides that "[t]he Company shall indemnify and hold harmless… from and against any and all losses, claims,… relating to the performance or nonperformance of any act concerning the activities of the Company."[81] The FIE Holdings LLC Agreement defines "Company" as "FIE HOLDINGS LLC, a Delaware limited liability company."[82] Section 4.14 only provides indemnity for claims concerning the activities of FIE—an entity that was not in existence until after the occurrence of Mr. Klein's actions that gave rise to the Kamenskiy Lawsuit and his indemnification demands.

In *Kokorich v. Momentus Inc.*, the Court of Chancery held that a right to indemnification under an indemnification agreement was "contractual and may be released, like any other contractual right."[83] In cases, like this one, Delaware law holds that the release operates to extinguish the right to indemnity where a party executes a release that covers a contractual indemnification right.[84]

As in *Kokorich*, the Court finds that Mr. Klein was free to contract to release the right to bring claims for indemnity and that his reliance on M&B Operating Agreement and the FIE Holdings LLC Agreement fail to support his claim.[85] This finding promotes a consistent reading

---

[80] *See id*. at 17.
[81] Compl., Ex. G ¶ 17.
[82] Compl., Ex. G, p.1.
[83] *Kokorich v. Momentus Inc.*, 2023 WL 3454190, at *10 (Del. Ch. May 15, 2023), *aff'd*, 308 A.3d 1192 (Del. 2023).
[84] *Id*.
[85] *See id.*

of all the agreements as there is no conflict concerning the indemnification provisions contained in the Purchase Agreement Release and the Employment Agreement Release.

**B. THE KAMENSKIY LAWSUIT DOES NOT ALTER THE APPLICABILITY OF RELEASES TO MR. KLEIN'S COUNTERCLAIMS.**

### 1. Timing of the Kamenskiy Lawsuit

Mr. Klein argues that the Releases are inapplicable here because the Kamenskiy Lawsuit was commenced in 2023, a year after the acquisition.[86] The Purchase Agreement Release's plain language, however, states that the release applies to claims that "may now or hereafter at any time be made."[87] The Court reads this language as focusing on the timing of the underlying act.

The Kamenskiy Lawsuit alleges that Mr. Klein refused to perform on certain representations and repudiated any future obligations prior to the Closing Date.[88] In fact, all alleged representations occurred prior to April 7, 2022.[89] Therefore, the Kamenskiy Lawsuit is based on Mr. Klein's actions prior to the Closing Date, meeting the requirements to be covered by the general releases contained in the Purchase Agreement and the Employment Agreement.

*US Ecology v. Allstate Power Vac, Inc.*[90] is instructive here. In *US Ecology*, the Court of Chancery granted a motion to dismiss because the relevant claim was barred by the plain terms of a release.[91] The release in *US Ecology* stated that "Seller on behalf of itself and each of its past, present, and future Affiliates" releases "Buyer [and] the Company" from "any and all claims… that have accrued prior to the Closing or that accrue at or after the Closing as a result of any act, circumstance, occurrence, transaction, even or omission on or prior to the Closing

---

[86] *See* Opp'n at 10 n.3.
[87] Purchase Ag. § 5.6.
[88] Kamenskiy Compl. ¶ 17.
[89] *Id.* ¶¶ 8, 9, 11 and 16.
[90] 2018 WL 3025418 (Del. Ch. June 18, 2018).
[91] *Id.*

Date."[92]  The Court of Chancery reasoned that the plain terms of the release barred the plaintiff's

unjust enrichment claim regardless of whether the claim accrued before or after the closing date

because the claim was a result of an occurrence prior to the closing date.[93]

As in *US Ecology,* the fact that the Kamenskiy Lawsuit was not filed until after the

Closing Date does not end the analysis or mean that the releases do not apply.[94]  The Kamenskiy

Lawsuit alleges that Mr. Klein's actions that gave rise to the claims all occurred prior to the

Closing Date.  To this point, the timing of the underlying act itself and not the initiation of the

lawsuit, is the controlling fact.

### 2. *Language Contained within the Kamenskiy Lawsuit*

Mr. Klein contends that M&B and FIE Holdings "impermissibly seek to have inferences

drawn in [Plaintiffs'] favor."[95]  The Court, however, is using the legal standard for Civil Rule

12(c) when ruling on the Motion.  The Court reads the arguments of M&B and FIE Holdings as

relying on the Kamenskiy Lawsuit's actual allegations.  All the Kamenskiy Lawsuit's allegations

concern acts which preceded the Closing Date.[96]  The representations made by Mr. Klein,

highlighted in the Kamenskiy Complaint, contain language such as:

> …beginning on or about 2015, [Mr. Klein] made multiple verbal statements and
> written representations to the Plaintiff regarding the value he delivered to M&B
> and consequently compensation that [Mr. Klein] would give to the Plaintiff for his
> effort and success.[97]

Another example:

---

[92] *Id*. at *8.
[93] *See id*.
[94] *See id.*
[95] *See* Opp'n at 4-6, 8-10.
[96] Kamenskiy Compl. ¶¶ 8,9 and 11.
[97] *Id*. ¶ 8.

15

> On or about 2021, [Mr. Klein] made written and verbal promises to the Plaintiff regarding compensation, company employment positions, and other non-monetary benefits.[98]

And:

> For example, in an electronic message on or about April 27, 2021, [Mr. Klein] promised the Plaintiff the following: '5M payout to you for all that you have done, a ½ price or free house on 8+ acres in Bethany, 5 years or less you take my C level role at $200K [emoji] plus bonus and dividends, and we will make your entire team millionaires in 5 years of [sic] less sound like a good plan? Did I miss anything.'[99]

Delaware law is clear that the actual language of the underlying complaint, rather than relying on the characterization of the underlying matter set forth by a party or counsel, governs when determining whether the underlying matter falls within the scope of an indemnification clause, or other mechanism to tender defense and liability of another.[100] Here, the Court finds that the actual language of the Kamenskiy Complaint demonstrates that all the representations at issue there arose before April 7, 2022.

Mr. Klein analogizes the ambiguity contained in the Kamenskiy Lawsuit to the underlying matter in *Smith v. Liberty Mutal Ins. Co.*[101] The ambiguity in *Smith* concerned allegations of sexual misconduct and whether those acts happened within the scope of employment and whether it was a question of fact reserved for a jury.[102]

That same type of ambiguity is absent in the Kamenskiy Complaint as each allegation only concerns pre-Closing Date acts, which unambiguously fall within the scope of the released

---

[98] *Id.* ¶ 11.
[99] *Id.*
[100] *Verizon Comm'ns Inc. v. National Fire Ins. Co. of Pittsburgh, PA. XL*, 2021 WL 710816 (Feb. 23, 2021) ("When determining whether an underlying claim is covered, the Court may disregard the underlying claimant's unilateral characterizations of its claim. The Court instead may look to the underlying complaint as a whole to draw reasonable inferences about the underlying claim").
[101] *See* Opp'n at 9-10 (referencing *Smith v. Liberty Mutal Ins. Co.*, 201 A.3d 555 (Del. Sup. 2019)).
[102] *See Smith*, 201 A.3d at 563.

granted by Mr. Klein. Analyzing the Kamenskiy Complaint, the Court finds that the claims there are premised only on pre-Closing Date acts, which are within the scope of the releases.[103]

### 3. Procedural Stage of the Kamenskiy Lawsuit

Mr. Klein argues that it is procedurally too early to enter a judgment on the pleadings because the Kamenskiy Lawsuit is ongoing.[104] Mr. Klein contends that that Court should wait until the Kamenskiy Lawsuit is resolved before determining the issue here.[105] However, the Court can determine a duty to defend or indemnify based on the allegations made in another complaint.[106]

The Court routinely addresses dispositive motions, i.e., whether there is a duty to defend or indemnify, based on whether the underlying allegations of a complaint were outside the scope of the relevant insurance policies' coverage.[107] And, such a decision can be made while the underlying lawsuit is pending.[108]

The Court should, when appropriate, enforce releases at the pleading stage. Otherwise, a party would lose a significant benefit of a contractual release. The Court understands that the value of release is not only avoiding liability, but also in avoiding the expense of litigation over the scope and effect of the release. For this reason, the Court should not delay resolving this issue. Doing so would have the effect of depriving M&B and FIE Holdings of the benefit of their bargain in obtaining the releases.

---

[103] *See generally* Reply Br.
[104] *See* Opp'n at 11.
[105] *See id*. at 11-12.
[106] *See, e.g., Westfield Ins. Co., Inc. v. Miranda & Hardt Contracting & Bldg. Servs., L.L.C.*, 2015 WL 1477970 (Del. Super. Mar. 30, 2015); *Caitlin Specialty Ins. Co. v. CBL & Assoc. Properties, Inc.*, 2017 WL 4784432 (Del. Super. Sept. 20, 2017)).
[107] *See Westfield,* 2015 WL 1477970, at *4; *Caitlin*, 2017 WL 4784432, at *9.
[108] *See Westfield,* 2015 WL 1477970, at *3; *Caitlin*, 2017 WL 4784432, at *10.

Mr. Klein also maintains that M&B and FIE Holdings are prematurely placing this issue before the Court. [109] The Court finds that this issue is ripe for adjudication. The Court, in denying Mr. Klein's motion to dismiss, already rejected Mr. Klein's assertation that this declaratory judgment proceeding is somehow unripe. The pleadings have been closed, and a Civil Rule 12(c) makes it possible for the Court to decide the issues raised in the Motion.

### C. MR. KLEIN'S COUNTERCLAIMS FAIL

Mr. Klein asserts that M&B breached the M&B Operating Agreement and that FIE Holdings beached the FIE Holdings LLC Agreement by refusing to indemnify Mr. Klein for the claims asserted against him in the Kamenskiy Lawsuit.[110] The Counterclaims are interrelated with the affirmative claims of M&B and FIE Holdings. As stated above, the releases are enforceable and Mr. Klein's reliance on other agreements fail to support his demand. Accordingly, the Court finds that the Counterclaims fail for the same reasons.[111]

### VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion.

**IT IS SO ORDERED.**

October 28, 2025
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, President Judge

cc:     File&ServeXpress

---

[109] *See* Opp'n at 13.
[110] *See* Mot. at 19.
[111] *See id.*